JOHN CUMMINGS, administrator, *vs.* WILLIAM T. BRAMHALL & others.

Suffolk.    March 30. — Sept. 21, 1876.    DEVENS & LORD, JJ., absent.

A testator, by his will, after giving a sum in trust for the benefit of his son R., bequeathed one eighth part of the remainder of his estate to each of his sons W. and T. absolutely, and six eighths to a trustee, to pay over the income of one eighth to W. and of one eighth to T., and the income of two eighths to each of his daughters E. and M. during their lives ; he directed that the "amount of all debts" due him, on his death, from W. and T., by note or book account, should be deducted from their respective shares, one half from the portion given absolutely, and one half from that in trust ; upon the death of W., T., E. or M., he bequeathed that portion of his estate, the income of which was given to him or her for life, to his or her children, and, if without children or more remote descendants living, "such share to the others of said four children" in equal parts absolutely; and by a codicil he revoked that portion of his will creating a trust for the sole benefit of R., and instead thereof gave in trust for R. during his life "an equal portion of all such property as I may die possessed of, as my other children may be entitled to under the will above named." T. died before the testator, without issue. The testator transferred certain bank shares to himself as trustee for his daughters E. and M. but retained control of them, appropriated the dividends to himself, and neither

daughter ever knew that the transfers had been made until after his death Before the date of his will, and up to his death, the testator had charged certain sums on his books to R., and, subsequently to the date of his will, certain sums to his daughter E. *Held,* that the portion of the remainder, given to T. absolutely, lapsed and became intestate property, R. taking one fourth absolutely ; the portion given in trust to T. passed to his brothers and sisters, R. taking one fourth in remainder absolutely. *Held, also,* that the charges against W. on the testator's books, including interest, and his notes held by the testator, were debts to be deducted from his share, one half from that given absolutely, the other from that given in trust, although the notes were barred by the statute of limitations. *Held, also,* that the charges against T. and his notes must be deducted from his share before its distribution, and that interest should be charged, if he had not paid it. *Held, also,* that the charges against R. and E. must also be deducted from their shares, as debts. *Held, also,* that there was no completed gift of the bank shares or transfer of title, and that they must be considered as assets of the estate, and so administered. *Held, also,* that the deductions to be made from the fund held in trust must be from the principal and not from the income.

BILL IN EQUITY originally brought by Andrew T. Hall, executor of the will and codicil of William Bramhall, and, after the death of Hall, revived by the administrator with the will annexed of the estate of Bramhall, to obtain the instructions of the court.

The will of the testator, dated April 18, 1865, contained the following clauses :

" Fourth. I give and bequeath the sum of twelve thousand dollars to said Andrew T. Hall, in trust, for the benefit of my son Robert Bramhall during his life, to be used and applied as follows : The said Hall is to keep the same safely invested, and pay to said Robert Bramhall all the net income thereof, as often as received, taking his receipt therefor."

" Sixth. I give, devise and bequeath one eighth part of all the remainder of my estate, real and personal, to each of my two sons, William T. Bramhall and Thomas M. Bramhall, their heirs and assigns forever.

" Seventh. I give, devise and bequeath the other six eighth parts of all said remainder of my estate to the said Andrew T. Hall, in trust, to manage and take care of the same, keeping it properly invested, and pay over the income as follows : the income of one of said eighth parts thereof to each of my two sons William T. Bramhall and Thomas M. Bramhall, during their lives ; and the income of two of said eighth parts to each of my two daughters, Elizabeth S. Bramhall and Maria S. Bram-

hall, during their lives; the income to be paid to my said daughters is to be paid upon their individual receipts respectively; or if they or either of them so elect, it may be retained by said Hall and invested for their or her benefit. The amount of all debts which at the time of my decease shall be due to me from my sons William T. Bramhall and Thomas M. Bramhall, whether by note or book account, is to be deducted from their respective shares, one half from the proportion given to them absolutely, and one half from the portion given in trust.

"Eighth. Upon the decease of any of said children, William T., Thomas M., Elizabeth S., and Maria S., I give, devise and bequeath that portion of my estate, of which the income is above given to him or her for life, to his or her children, their heirs and assigns forever. And if either of them shall die leaving no child, or more remote descendant, then living, I give, devise and bequeath such share to the others of said four children, in equal shares, their heirs and assigns forever."

The codicil, dated July 20, 1866, was as follows:

"First codicil to my will, dated the seventeenth day of April, 1865: To wit, fourth of said will, wherein I give and bequeath to Andrew T. Hall, in trust, ten thousand dollars for the benefit of my son Robert Bramhall during his life, &c., this part of said will I now revoke and declare void; and instead thereof I give and bequeath to the said Andrew T. Hall, in trust for my son Robert Bramhall, during his life, an equal portion of all such property as I may die possessed of, as my other children may be entitled to under said will above named. The said Andrew T. Hall is to keep the same safely invested, and to pay to said Robert Bramhall such portion of net income thereof as often as received, taking his receipt for the same, or such sum or sums as may be necessary support and maintenance (respectably.) Should the income of the property coming to said Robert exceed his reasonable necessities and requirements, the excess, if any, I direct and request the said Hall to invest in some good securities, say state of Massachusetts or city of Boston securities."

The facts of the case and the instructions requested appear in the opinion. Hearing before *Endicott*, J., who reserved the case for the consideration of the full court.

*J. Willard*, for the plaintiff.

*W. G. Russell,* for William T. Bramhall.

*C. H. Hurd,* for Robert Bramhall.

*G. Putnam, Jr.,* for the daughter Maria.

*H. E. Ware,* for the daughter Elizabeth.

*C. H. Hill,* for the grandchildren.

ENDICOTT, J. Before considering the several requests for instructions propounded by the bill, it is necessary to determine how far the sixth, seventh and eighth clauses of the will are affected by the provisions of the codicil.

When the testator made the will, April 18, 1865, he had five children living, who were his only heirs at law, William, Thomas, Robert, Elizabeth and Maria. Thomas died before the testator, and after the codicil was made; the others survived him. By the fourth clause of the will, the testator gave twelve thousand dollars to a trustee to hold in trust for the benefit of Robert, and the income to be paid to him during his life, upon his receipt. By the sixth clause, he gave one eighth part of the remainder of his estate to each of his sons William and Thomas absolutely. By the seventh clause, he gave the other six eighths to a trustee to hold in trust, and to pay over the income of one eighth to William and Thomas respectively, and of two eighths to Elizabeth and Maria respectively, during their lives. The seventh clause also contains a provision that the amount of all debts due him, on his death, from William and Thomas, by note or book account, should be deducted from their respective shares, one half from the portion given outright, and the other half from the portion given in trust. At this time, William, Thomas and Robert were largely indebted to him for money lent to them to assist them in business and for other purposes, as appears by his books, which was charged to them as a debt, and on which an interest account was kept. He also, at that time, held notes of William and Thomas then overdue. He thus endeavored to make the shares of the remainder of his property equal, by charging to William and Thomas the debts they owed him, so that his four children, who were to share the remainder, should, on the final distribution and settlement of the estate, have each received the same amount. Robert not being entitled to a share in the remainder, but being provided for by a separate trust fund, under which he takes less than a share in the remainder

would be, the testator did not require his loan to be paid; and he then had no charges against his two daughters. By the eighth clause, he gave, upon the death of William, Thomas, Elizabeth or Maria that portion of his estate, the income of which was given to him or her for life, to his or her children. And, in the event that either should die without children or more remote descendants living, he gave "such share to the others of said four children" in equal parts absolutely.

Under these clauses, an equal division of the whole remainder of his property was evidently intended among these four children ; the daughters taking only the income of their shares, and each son taking one half his share absolutely, and the income only of the other half. And the eighth clause, which is in fact and must be taken as part of the seventh, provides for the disposition of the share of each so held in trust upon his or her decease.

The codicil, dated July 20, 1866, makes a material change in this division. It is inartificially drawn, but the meaning and intention of the testator are apparent. It revokes the fourth clause, creating a trust for the sole benefit of Robert, and "instead thereof" gives to the same trustee named in the seventh clause, in trust for Robert during his life, " an equal portion of all such property as I may die possessed of, as my other children may be entitled to under said will above named." The income as received, or so much as is necessary for his support, the trustee is to pay over to Robert, on his receipt. And any excess of income not necessary for his support and maintenance, the trustee is to invest. He thus intended to give Robert the same as his other children. No provision is made in the codicil for the disposition of the principal after Robert's decease. In using the words " all such property as I may die possessed of," in this connection, he undoubtedly refers to the remainder of his property disposed of in the sixth and seventh clauses, as his other children are entitled to no other property under the will. As the share Robert is to take under the codicil is in trust, it is equally clear that he did not intend that Robert should take any portion of that share absolutely, as provided for William and Thomas in the sixth clause ; and as each of the other four children is to receive an equal share in amount of the remainder, though the

two sons take a part of their shares absolutely, Robert is entitled to an equal share of the remainder with the others, which must be held in trust. And the effect of the codicil is to insert Robert's name in the seventh clause, and to give him the income of a share in the remainder equal to that of his sisters. This cuts down the shares of the other brothers and sisters, and, taking the will and codicil together, William and Thomas each take one tenth of the remainder absolutely, and the income of the remaining eight tenths is to be paid over by the trustee, one tenth to William and Thomas, and two tenths each to Elizabeth, Maria and Robert.

Robert being thus introduced into the seventh clause, and entitled to an equal share in the remainder, the same as the other children, it follows that he must take his share subject to the provisions therein contained as to the other children, in those respects wherein he stands on the same footing with them or either of them. As he was indebted to the testator in the same manner as William and Thomas, he must take his share subject to the same deductions. It was clearly the intention of the testator, at the time he made the will, that the debts of those who were indebted to him should be deducted from their shares, in order that the division should be equal; and though he says nothing in terms as to Robert's debts in the codicil, except that he is to have an equal portion as the others, it is evident that the equality he intended can only be obtained by deducting Robert's debts from his share. *Smith* v. *Chandler*, 1 Gray, 524. *Upton* v. *Prince*, Cas. temp. Talbot, 71.

Nor is the effect of the codicil limited to the seventh clause; it applies also to the eighth, and introduces the share, of which Robert is to receive the income during life, into the system of remainders provided in the event of the death of either of the children. His share thus became subject to the same limitations to which the other shares were subject, and he became entitled to an equal portion of the share of any brother or sister dying without children; for it is clear the testator intended that all that portion of the remainder of his property which was in trust should be subject to the provisions of the eighth clause; and as in the codicil he gave no remainder over in Robert's share, he clearly intended it should come within that clause. This con-

struction gives Robert "an equal portion as my other children may be entitled to under said will," as was clearly the purpose and intent of the codicil. And it is none the less equal in amount with the others because a portion goes absolutely to his two brothers, or because the trustee has a certain discretion in the payment of his income and the investment of any surplus of income, which may remain after properly providing for the support of Robert.

The general scheme, therefore, of the will, as modified by the codicil, is an equal division of the remainder among all his children ; and the debts due to the testator at that time, and at the time of his decease, he intended to treat as assets constituting a part of the remainder to be divided; the debts of each child to be deducted from and to be a charge upon his or her share. The division of the whole remainder is not unequal because William and Thomas take a part of their share absolutely. Nor does the fact that the amount of income received by the children respectively may vary by reason of deductions, render it unequal. In *Treadwell* v. *Cordis*, 5 Gray, 341, the children were entitled to equal proportions of the income of a trust fund, but the debts of each child in excess of $20,000 were to be deducted from his proportional share in the fund. And it was said by Shaw, C. J., in speaking of the words "equal proportions," " This, we think, does not mean in equal aliquot parts or quarters, but in proportions equalized or made equal by charging advances previously made to those who had received them, deducting them from their shares, and replacing the amounts thus obtained as a part of the estate to be divided."

This general statement of the interpretation to be given to the will and the effect of the codicil has a material bearing upon several of the requests for instructions set forth in the bill, which will be considered in their order.

1. By the sixth clause, as changed by the codicil, William and Thomas each take one tenth of the remainder absolutely. Thomas having died before the testator, without issue, and there being no gift over of this portion of his share, it lapsed and became intestate property. It is therefore to be divided equally among the heirs at law, and Robert takes one fourth part of the same absolutely. *Sohier* v. *Inches*, 12 Gray, 385. *Workman* v.

*Workman*, 2 Allen, 472. *Smith* v. *Haynes*, 111 Mass. 346. In *Jackson* v. *Roberts*, 14 Gray, 546, the court found reasons for taking that case out of the general rule, which we do not find in this case.

As to the one tenth of the remainder in trust for Thomas under the seventh clause, as modified by the codicil, upon the death of Thomas before the testator, it passed under the eighth clause to his brothers and sisters, and Robert is entitled to one fourth in remainder absolutely. *Prescott* v. *Prescott*, 7 Met. 141. *Goddard* v. *May*, 109 Mass. 468. The result would be the same, if it were to be considered as lapsed, for Robert would then take one fourth absolutely as heir at law. This share of Thomas goes to his brothers and sisters, subject to the deductions directed in the seventh clause, and which will be considered more at length hereafter.

2. It appears that at the testator's death, William was indebted to him in a large sum of money as charged upon his books, and on several notes dated more than six years before his death. In the books William is charged with various sums paid to him for his business and other purposes from the year 1860 to the testator's death in 1871. Against these charges are credited payments made from time to time by William. An interest account was made up yearly on the charges and payments, and carried to the next year's account, leaving a balance charged to William in 1871 of about $40,000. In addition to this sum, the notes amounted to about $8000.

It is admitted that the principal thus charged in the book account, and the notes, if not barred, should be deducted from William's share; but it is contended that interest should not, because by reason of the provision of the will, that the share of William should be diminished by his debts, they became advancements to a child, upon which interest cannot be allowed. *Hall* v. *Davis*, 3 Pick. 450. *Osgood* v. *Breed*, 17 Mass. 356, 359. It is also contended that the notes cannot be treated as debts or advancements, because barred by the statute of limitations.

The first question that arises is, whether the debt of William on the notes, and as charged in the books, is an advancement. It is not, in the books, expressed to have been made or charged as an advancement, and has not been acknowledged in writing

by William to be so. It does not, therefore, come within the Gen. Sts. c. 91, § 8. The character of the account clearly indicates that it was treated as a debt upon which payments had been made from time to time, and interest charged and credited in the usual manner, as in a purely business transaction. Both interest and principal are treated as a debt, and the account and also the notes are merely evidence of a debt. *Barton* v. *Rice,* 22 Pick. 508. They are not advancements by force of the statute, or by virtue of their original character; and can only become such by reason of the provisions of the will. The intention of the testator in this respect must determine the question, and that is to be ascertained from the language of his will. *Bacon* v. *Gassett,* 13 Allen, 334. It is to be remarked that a debt is not necessarily to be treated as an advancement because the will orders it to be deducted from a child's share. In *Treadwell* v. *Cordis, ubi supra,* the testator directed that advances made to his children should not draw interest, except what should exceed $20,000, and the court ordered that interest should be paid on the excess, because the testator intended it. A testator may thus in his will order debts to be paid with interest out of a child's portion, and, when he fails so to direct in terms, his intention in that respect is to be gathered from the language he uses, as applied to the original character of the debts. Upon a fair construction of his words in relation to the deduction of William's debts, we are of opinion the testator here intended that the whole sum due him and charged at his death, including interest and also the notes, should be deducted as a debt, and not as an advancement. *Poole* v. *Poole,* L. R. 7 Ch. 17. In other words, the testator intended to treat these debts as part of his estate, and as such to form a part of the share allotted to William.

In *Hall* v. *Davis,* 3 Pick. 450, the will directed that the children should be charged with the demands the testator held against them, and the bequests given them should be diminished by deducting such demands, and that they should be considered " as a part of the legacies and devises herein provided; " and the court said: " No doubt the testator might have considered the notes and the book charges as debts, but in the general distribution of his estate he chose to consider them both as advance-

ments." In *Bacon* v. *Gassett*, 13 Allen, 334, the will, after directing that money advanced and notes taken from his children should be deducted from their portions respectively, designated the deductions to be so made as advancements; the language was technical and explicit as indicating his intention. Those cases are relied upon as controlling this, but the language here is very different. The testator says : " The amount of all debts which at the time of my decease shall be due to me from my sons William and Thomas, whether by note or book account, is to be deducted from their respective shares." There is nothing to show any intention to change the character of the debt by note or book account, which at that time in terms included interest, except so far as to make it a charge on the share, which it would not otherwise necessarily have been; *Hancock* v. *Hubbard*, 19 Pick. 167 ; and the fact that he charged interest afterwards is significant as showing the meaning of the language that he used.

Nor is the objection well taken that the notes cannot be deducted because barred by the statute at the time the will was made. Debts due from a legatee, who is a child of the testator, cannot be barred in his favor by the statute, so that the testator has no right to treat them as advancements or as debts. In distributing his own property among his children, and deciding what shall be a just and equal portion for a child, he may treat any sum which he has paid to a child as a debt or advancement to be deducted from his share. It is in the nature of a charge to be satisfied out of the portion, and must be met before the legatee is entitled to the legacy. A testator may not only make his own debts due from the legatee a charge, but debts due from another. It is not unusual to charge a daughter's share with her husband's debts to the testator. In *Poole* v. *Poole*, L. R. 7 Ch. 17, a testator directed that certain advances should be deducted from a daughter's share, and also, if at the period for distribution she should be indebted to either of her brothers and sisters, his trustees should be empowered to deduct such debts from her portion. She had borrowed money from them both before and after the date of the will, and most of the debts had been barred by the statute before the distribution. And it was held that they should be deducted; but as the testator had put his own debt on the footing of an advancement, the infer

ence was that he intended to put the claims of the brothers and sisters on the same footing, as advancements and not as debts, and interest was not allowed. See *Rose* v. *Gould*, 15 Beav. 189; *Courtenay* v. *Williams*, 3 Hare, 539.

The case of *Rogers* v. *Daniell*, 8 Allen, 343, turned upon the phrase "legal debts." The direction of the will was that legal debts should be deducted from each child's portion; and notes signed by a daughter with her husband, while valid as against him, were held not to be her legal debts, as she had no power to make the contract, and under no circumstances could it then be enforced against her.

Although these notes could not have been legally enforced in an action at law, yet they were legal contracts when entered into, and evidence of a payment of money by the father to the son, and the father could properly regard them as assets, to be included in the remainder of his property, so far as to form a portion of a share of the son to whom the money had been actually advanced.

The account and the notes are, therefore, debts in the nature of a charge upon William's share, and must be deducted, one half from the portion given absolutely, and one half from the portion given in trust. The deductions from the portions given in trust must be from the principal and not from the income. *Treadwell* v. *Cordis, ubi supra.*

3. The charges and credits against Thomas in the books are similar to those against William, and cover substantially the same period, and the testator also held notes against Thomas dated more than six years before his death. The only difference in the accounts is, that while Thomas is credited with interest, he is not charged with interest, and no balance of the account was struck by the testator. We are of opinion that the same rule, laid down in regard to William's debt, applies to the debt of Thomas, including account and notes, and as the account is left open, interest should be charged to Thomas if, upon examination, it appears that he has not paid it. As a part of the general scheme of the will and codicil, the two sons should be treated alike. Nor is this debt any less a charge, because Thomas died before the testator. It is a charge on his share, directed in terms to be deducted from it. The fact of the indebtedness is not changed, and the debt is not necessarily extin-

guished by his death. It is a burden which is attached to that particular share, and whether upon his death the share, or any portion of it, goes to his issue, his heirs at law, or his brothers and sisters as provided in the will and codicil, those, who take, take subject to the deductions. To hold otherwise would be to reduce the amount which the testator intended should go to the trust, and materially change the purport and intent of the will. And it does not affect the question that the persons who take the share of Thomas absolutely on his death, and who take the income of the trust fund, are the same.

4. A similar account was opened with Robert in 1860, containing charges and credits, which was closed April 1, 1865, before the date of the will, at which time the balance appears to have been about $7000. As we have previously expressed the opinion that Robert, upon being admitted by the codicil to a share of the remainder under the seventh clause of the will, must take his share subject to the same provisions as to deduction of debts applicable to the other children, this sum must be deducted as a debt from the principal of the share in trust, on which he is to receive income. The subsequent and separate charges against Robert for board at a lunatic hospital, beginning July 5, 1865, before the date of the codicil, and continued by the testator until his death, must stand upon the same ground. The fact that Robert was unable to pay his own board, and that there was a moral obligation or legal duty on the part of the father to support him, would not preclude the father from treating the money so advanced as a debt to be deducted from Robert's share; and in settling the estate the sum of $5000 so charged must also be deducted.

The fact that Robert became insane is not material in construing the will or determining the rights of the several children. Robert had been insane and at the hospital more than a year before the codicil in his favor was made; and though he continued to remain there until the testator's death, no change was made in the will.

5. In regard to the bank shares transferred by the testator to himself as trustee for his daughters Elizabeth and Maria respectively, we are of opinion, on the facts before us, that they must be considered assets of the estate to be held and administered as such.

The case comes within the rules stated by Mr. Justice Wells in *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228, where the authorities are considered at length. The testator, if he intended a gift, never completed it, and he did not become a trustee for his daughters except by the mere form of the certificate. He retained the control of the stock, appropriated the dividends to himself, and neither daughter ever knew that the transfers had been made until after his death. There was no act on his part delivering the property out of his possession, indicating an intent and purpose to pass the title to his daughters, and he did not so deal with it as to deprive himself of the ownership or to change his right in that respect. See *Richards* v. *Delbridge*, L. R. 18 Eq. 11; *Warriner* v. *Rogers*, L. R. 16 Eq. 340; *Shurtleff* v. *Francis*, 118 Mass. 154.

6. In the year 1866, the testator charged upon his books to his daughter Elizabeth certain sums, amounting to about $15,000, representing the expenditure upon a house built upon land which had been conveyed to her by her husband's father. These sums do not constitute an advancement under the statute, and we see no evidence that they were intended by the testator as ademption of her legacy *pro tanto*. The only question is whether this sum so charged constituted a debt, which, under the provisions of the will, the testator intended should be deducted from her portion. We are of opinion that it does, for the reasons previously stated.

In the case of *Smith* v. *Chandler*, 1 Gray, 524, the testator ordered the residue of his property to be divided into five equal parts : one part he bequeathed to a son ; one to each of his two daughters ; and one to the children of a deceased daughter. At the time of the will, none of the legatees were indebted to him. Afterwards the husbands of the two daughters became indebted, and by a codicil he directed that their debts should be deducted from the legacies of the respective wives. The son also became indebted, and, having died, by another codicil the son's share was given to his children, but the testator directed the son's debt to be deducted from the share. The children of the deceased daughter also incurred debts for which they gave notes. The testator made no codicil in regard to their share, but it was held that the notes were to be deducted from their bequests re-

spectively, although there was no provision in the will and codicil to that effect. The court found that it was the intention of the testator, as gathered from the will and codicils, that the debts of all the legatees, or those who were to derive immediate benefit from the legacies, should be deducted, and that no express provision was necessary to effect that result as to the debts of the children of the deceased daughter. That case bears directly upon the point here presented. Any inference to be drawn from the omission to mention the debts of Elizabeth in the will with William and Thomas is rebutted by the fact that no debts were then due from her, and, as she received the benefit of the expenditure on the house, it is immaterial that she did not request it, and did not know that it was charged to her. There is no evidence that he ever intended it as a gift.

The sum thus advanced to Elizabeth must therefore be deducted as a debt from the principal of her share, held in trust for her benefit under the will.          *Decree accordingly.*