EDSON H. CHACE *vs.* DANIEL A. CHAPIN & another.

Bristol.   Oct. 28, 1880. — Jan. 11, 1881.   AMES & ENDICOTT, JJ., absent

A trust in personal property may be shown by parol evidence.

If personal property is transferred by a conveyance absolute in form, it may be shown to have been in trust by the subsequent declarations of the transferror assented to and acted upon by the transferee.

If a trust is once established, the acts of the trustee in using the property as his own, without the knowledge of the *cestui que trust*, do not affect the rights of the latter.

Neither an assignee under a voluntary assignment, nor an assignee in bankruptcy, takes any greater rights in property, the legal title to which is in the assignor or bankrupt, than he himself has.

COLT, J.   This is a bill in equity in which the plaintiff seeks to recover a dividend on certain shares of the capital stock of the Old Colony Railroad Company, now standing in the name of

Chapin and Braley, as the assignees in bankruptcy of Samuel A. Chace. He claims to be entitled to the income of this stock for life, by virtue of and in accordance with the terms of a trust created by Mrs. Holmes when she transferred to said Samuel a legal title to the stock.

The defendants deny the existence of the trust; and Chapin and Braley, as assignees in bankruptcy, contend that, as holders for value in good faith and without notice, they are entitled to have the stock discharged of any trust that may have existed while the title was in the bankrupt.

The case was sent to a special master to find the facts, and, upon his report, it is clear that, at the time of his failure, Chace held the stock charged with the trust upon which the plaintiff relies. It appears that this stock, with a large amount of property consisting largely of stock in other corporations, was transferred on July 23, 1853, in the usual form, by Mrs. Holmes to Chace; and that in a few days thereafter, that is to say, on the 6th of August following, she wrote a letter in which she gave him full directions as to the disposition of that part of the property in which it was intended that he should not have the beneficial as well as legal interest. This letter contains, among many gifts to other persons, a distinct gift of the net income of the railroad shares in question to the plaintiff " as long as he shall live." Mrs. Holmes was the sister of the plaintiff and of Samuel A. Chace. She was providing for one brother out of property given to the other. She expresses in this letter perfect confidence in the integrity of the latter, and that he will " strictly carry out" any wishes she may have expressed or any directions she may have given in relation to the property. She adds that she expresses these wishes in writing in order that he may have something " more tangible than words " to guide him in the discharge of his trust, and to protect him against fault-finding, if any there should be. This letter, if not to be regarded as contemporaneous with and forming part of the original transaction, contains nevertheless abundant evidence that it was intended to preserve in writing what was well understood between the parties when the property was actually transferred. The words used were intended and understood by both to be imperative. *Hess* v. *Singler*, 114 Mass. 56, 59. The master finds that, from the time

of the transfer until January 1878, Chace collected all dividends on the stock in question and paid them to the plaintiff, who resided in South Africa, not as gratuities, but in the discharge of what he understood to be his legal duty. There was nothing left undone by Chace towards the execution of the trust. The nature of the trust made it proper that the stock should be left standing in his own name, because he was to be absolute owner on the termination of the life interest. But what is more conclusive as evidence of this trust is the fact that, in 1854, after the death of Mrs. Holmes, Chace brought a suit in equity for the purpose of restraining her administrator from the prosecution of suits at law for the recovery of this property, in which the bill alleged in substance that this railroad stock and other property was conveyed to and accepted by him upon the trusts recited in the letter of August 6, 1853, annexed to and made part of the bill; and prayed for the protection of the court in the discharge and execution of said trusts.

It is not necessary, for the purpose of establishing a trust in personal property, that there should be a formal written declaration of trust signed by the party charged with the trust. The want of a written declaration may be a fact of more or less weight in determining whether, upon all the evidence, a completed trust has been created. If the alleged trust arises from a gift of personal property to another, to be held by him for a particular purpose, the delivery of a written declaration is of less importance. It is held that such a trust may be proved by oral evidence. But however proved, it must always appear, from the nature of the transaction, the relation of the parties, and the purpose of the gift, that the fiduciary relation is completely established. It is enough if the party supposed to be trustee unequivocally declares in writing, or orally if the property be personal, that he holds it upon a well-defined trust. When the trust is thus created, it is effectual to transfer the beneficial interest. In *Ex parte Pye*, 18 Ves. 140, 149, a power of attorney sent by a person to his agent in Paris, directing him to transfer to a lady named an annuity standing in his name, was held by Lord Eldon to be a sufficient declaration of trust. See also *Wheatley* v. *Purr*, 1 Keen, 551; *M'Fadden* v. *Jenkyns*, 1 Hare, 458; *S. C.* 1 Phillips, 153; *Gerrish* v. *New Bedford Institution*

*for Savings*, 128 Mass. 159; *Cummings* v. *Bramhall*, 120 Mass. 552; *Davis* v. *Coburn*, 128 Mass. 377.

It can hardly be necessary to add that, if the trust be once established, the acts of the trustee in pledging the stock on several occasions for his own debts, without the knowledge or consent of the plaintiff, will not affect the rights of the latter.

As to the claim of the assignees in bankruptcy, that the trust, if it ever existed, was discharged by the conveyance of Chace to Brayton as trustee, to secure his debts to the Union Mills and others, on the ground that Brayton took as a holder for value without notice, the first answer is, that at common law an assignee under a general assignment for the benefit of creditors takes no better title and no higher rights than the assignor himself had, and is not to be regarded as a purchaser for a valuable consideration without notice. If the assigned estate is subject to a trust, the assignee takes subject to the rights of the equitable owner. *In re Howe*, 1 Paige, 125. *Van Heusen* v. *Radcliff*, 17 N. Y. 580. *Griffin* v. *Marquardt*, 17 N. Y. 28.

A further answer to the claim is that the conveyance to Brayton was wholly defeated by the subsequent bankruptcy of Chace. The assignees took, not as purchasers of Brayton's title, but under their rights as assignees in bankruptcy, and subject to all the legal and equitable claims of others. The statute declares that "no property held by the bankrupt in trust shall pass by the assignment." U. S. Rev. Sts. § 5053. "Assignees in bankruptcy do not, like heirs and executors, take the whole legal title in the bankrupt's property. They take such estate only as the bankrupt had a beneficial as well as legal interest in, and which is to be applied to the payment of his debts." *Rhoades* v. *Blackiston*, 106 Mass. 334. See also *Cook* v. *Tullis*, 18 Wall. 332; *Kelly* v. *Scott*, 49 N. Y. 595; *In re McKay*, 1 Lowell, 345.

*Decree for the plaintiff.*

*E. Ames*, for the plaintiff.

*C. W. Clifford & M. G. B. Swift*, for the defendants.