LUCY S. PERKINS *vs.* T. H. PERKINS & others.

Suffolk. January 24, 25. — March 6, 1883.

Shares of stock in several corporations were transferred to A. to hold in trust for B., a woman, the certificates being in the name of A. personally. A used the shares as his own, and sold all of them, and, for the purpose of protecting the trust, subsequently purchased other shares to the same amount in the same corporations. While he held the latter shares, B. asked him for the names of her stocks, and A. gave her a list. After a libel for divorce was filed against A., he sold some of the shares, and a few days after purchased the same number in the same corporation. Subsequently, A. transferred all the shares to C., with the undisclosed intent of protecting the trust. *Held,* on a bill in equity by the wife

of A., against A., B. and C., to reach and apply these shares in satisfaction of an execution for alimony which she had obtained against A., that these facts would warrant a finding that the shares in the hands of C. were impressed with a trust in favor of B.; and that the bill could not be maintained.

BILL IN EQUITY, filed November 15, 1880, under the Gen. Sts. c. 113, § 2, cl. 11, against T. H. Perkins, Edward W. Mussey and Julia Higgins, to reach and apply, in satisfaction of an execution for alimony held by the plaintiff against the defendant Perkins, her former husband, certain shares of stock, standing in the name of the defendant Mussey, and claimed by the defendant Higgins to be held by Mussey in trust for her benefit. The case was heard by *Devens*, J., and reported for the consideration of the full court, in substance as follows:

There was due from the defendant Perkins to the plaintiff the sum of $11,198.95, being the balance due on an execution against him in her favor, dated November 12, 1880, for alimony in a divorce proceeding begun on January 28, 1880.

In 1870, certain shares of stock in various corporations were set off to Higgins, with other property, in the division of the estates of her brother and sister. At the request of Higgins, the shares of stock were transferred to Perkins, that she might be able to sell them without the consent of her husband, from whom she was separated. Certificates, each of which was numbered, were issued to Perkins in his own name alone. Perkins in fact took the shares in trust for Higgins, but improperly, though without any fraudulent purpose, mixed them with his own shares in the same corporations, and sold them as his own. During the nine years following, he parted with all the shares of stock which he had had from Higgins, and it did not appear what became of them or their proceeds. During the same time he purchased and sold shares of stock, so that, in each of the corporations, he sometimes had certificates in his name for a larger number of shares than he received from Higgins, sometimes for a smaller number, sometimes for the same number, and sometimes for none at all. He never accounted to Higgins for the sales of the shares he received from her, but paid her sums of money equivalent to the dividends declared from time to time by the various corporations on the respective number of shares in each, which he had received from her.

Prior to December 15, 1879, Perkins had from time to time acquired, by purchase or otherwise, and then held standing in his name, shares of stock in each corporation in amounts corresponding to those he had received from Higgins, and he then held no other shares in any of these corporations.

On December 15, 1879, Higgins asked Perkins for the names of the stocks belonging to her, saying she intended to make her will, and he gave her a paper with merely a list of stocks upon it, which list included those the subject of this action.

On March 2, 1880, he transferred sixteen shares in one of the corporations, and on the 13th of the same month there were transferred to him the same number of shares in the same corporation, which are among those now in controversy.

On May 15, 1880, Perkins transferred the stocks now in controversy to Mussey, and took out new certificates in Mussey's name, without disclosing to him or to any one a purpose to protect Mrs. Higgins or to create a trust, and without making any memorandum to that effect. He testified that he made this transfer " to protect the identity of these shares as belonging to Julia Higgins, and not to connect them with any other part of my property." Mussey transferred the certificates in blank to Perkins, and handed them to him. Subsequently, Perkins gave them back to Mussey, but without disclosing to him or to any one a purpose to protect Higgins or to create a trust. There was no evidence that the shares held by Perkins in December 1879 were purchased with the proceeds of the shares belonging to Higgins which had been sold.

The judge found that Perkins purchased these shares for the purpose of guarding the trust, and intending to set them aside and use them as the trust fund; that the giving of the memorandum of December 15, 1879, was a declaration of such intent; and that, in putting the stocks into the hands of Mussey, he intended to set them apart for the protection of Higgins.

The judge also reported the evidence bearing upon the principal questions in issue. If the facts found and the evidence reported were sufficient to support the conclusion that a trust in favor of Higgins existed as to the shares originally transferred to the defendant Perkins, and attached to the shares

subsequently transferred to Mussey, a decree was to be entered accordingly; otherwise, a decree to be entered for the plaintiff.

*A. S. Wheeler & E. W. Hutchins*, for the plaintiff.

*W. G. Russell & G. Putnam*, for Higgins.

COLBURN, J.   We can have no doubt, that the finding of the court, that the shares of stock transferred by direction of Mrs. Higgins to Perkins, in 1870, were held by him in trust for her, was fully sustained by the evidence.   This finding we do not understand to be seriously questioned by the plaintiff.

The chief question in the case is whether the shares of stock which stood in the name of Mussey, and were in his possession at the time the bill in this case was brought, were impressed with the same trust in favor of Mrs. Higgins as those originally transferred by her to Perkins.   Perkins having wrongfully disposed of the stocks, it was his duty to replace them, and if his breach of trust had been discovered, a court of equity, at the election of the *cestui que trust*, would have required him to replace them.   *Ex parte Shakeshaft*, 3 Bro. Ch. 197.   *O'Brien* v. *O'Brien*, 1 Molloy, 533.   *Oliver* v. *Piatt*, 3 How. 333, 401. Perry on Trusts, § 844.   It is true that Mrs. Higgins would not be obliged to accept the substituted stocks, and might have required Perkins to pay her the proceeds of the stocks sold, but if she chose to accept the stocks, no one can object.   One share of stock was just as good as any other share ; the certificates were not shares, but only the evidence of the ownership of shares, and a certificate of any number of shares had the same value as any other certificate of the same number of shares in the same corporation.

The report finds that Perkins had from time to time, prior to December 15, 1879, acquired, by purchase or otherwise, and then held, standing in his name, as the original shares had stood, the exact number of shares in each of the corporations, then belonging to Mrs. Higgins, and that he then held no other shares in any of these corporations, and that he had acquired these shares for the purpose of guarding the trust, intending to set them aside and use them as the trust fund.

The plaintiff contends, that although the purpose of Perkins was as found by the court, yet that this is not sufficient; that

there must be some act done transferring the beneficial interest in the shares to the *cestui que trust*, and that there was no such act in this case. Perkins being under a positive obligation to make good the trust property, a less significant act was necessary to transfer the beneficial interest to Mrs. Higgins than might have been required in the case of a mere voluntary declaration of trust.

In *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228, Mr. Justice Wells says: "So if there be an actual trust, and an obligation to make the transfer for the security of that trust, the continued possession of the instrument by the person who executed it, being also its proper custodian for the *cestui que trust*, is consistent with an assignment completed by delivery; and a legal delivery to pass the title will be inferred from very slight evidence."

In *Chace* v. *Chapin*, 130 Mass. 128, Mr. Justice Colt says: "It is enough if the party supposed to be trustee unequivocally declares in writing, or orally if the property be personal, that he holds it upon a well-defined trust. When the trust is thus created, it is effectual to transfer the beneficial interest."

We can have no doubt that the judge was entirely supported by the facts found, and the evidence reported, in his conclusion, that the stocks acquired by Perkins, with the intent to constitute them the trust fund, were, by his so holding them, and the delivery of the list, and the declaration to Mrs. Higgins that he held these stocks for her, impressed with the same trust, in her favor, as those originally transferred to him for her benefit. The transfer of the shares to Mussey, though it might not under the circumstances have much significance as creating a trust, was entirely consistent with the trust, and with a design effectually to distinguish the trust property.

It is urged, that, as after December 1879 Perkins transferred for his own purposes the stock in one of the corporations, and did not acquire the same number of shares in that corporation for eleven days, the newly acquired shares were not impressed with the trust. But we are of opinion that the acquisition of the same number of shares, and placing them with the other

stocks which were impressed with the trust, and putting the whole into the hands of Mussey, were acts of sufficient significance to impress the newly acquired shares with the same trust as those disposed of. *Decree for the defendant Higgins.*