WALTER H. HOWE, executor & trustee, *vs.* BERTHA L. HOWE & others.

Middlesex.   March 11, 1903. — June 19, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Devise and Legacy*, Construction.   *Executor.*

A testator left all his property remaining after the death of his wife to his three children "to be divided among them equally, except that, whatever shall at my death be due me from K. individually or from the firm of K. and Company . . . shall be deducted from the share of my said daughter N. and reckoned as part of her one third in the clause given to her."   K. was the husband of the daughter named.   Both K. and the testator had been members of the firm named, but it was dissolved by an agreement of liquidation made nearly two years after the will was executed and only six days before the death of the testator.   By this agreement the testator and a third partner assumed the firm debts and conveyed to K. certain firm property on his agreeing to give his personal services without compensation to liquidating the business and to pay the testator and the other partner a certain amount, for which he gave notes to each of them.   *Held*, that the only deduction to be made from the share of the daughter was the amount of notes of K. held by the testator at the time of his death, all debts to the testator from the firm having been extinguished by the dissolution and the liquidation agreement.   *Held, also,* that, on the notes of K. to be deducted, interest was to be reckoned only to the time of the testator's death, *and, also,* that the notes of K. should be transferred to the testator's daughter N. or the administrator of her estate, and that the amount of the notes with interest to the death of the testator was to be reckoned in ascertaining the whole fund to be divided.

BILL IN EQUITY, filed July 31, 1902, by the surviving executor and trustee under the will of Henry C. Howe, late of Lowell, as to his duties in carrying out the provisions of the third clause of that will.

The case came on to be heard on October 22, 1902, before *Knowlton*, J., who reserved it upon the bill and answers for determination by the full court, such decree to be entered as law and justice required.

The third clause of the testator's will was as follows:

" At the decease of my wife I give, devise and bequeath all that shall then remain unexpended of my estate real and personal, to my three children, to be divided among them equally, except that, whatever shall at my death be due me from Charles B. Kelley individually or from the firm of C. B. Kelley and Company of Chicago, Illinois, including in such indebtedness any and all liability incurred on account of any endorsement or endorsements of promissory notes either of or for said Charles B. or of or for said firm, shall be deducted from the share of my said daughter Nellie F. Kelley and reckoned as part of her one third in the clause given to her."

The testator left a wife and three children one of whom was Nellie F. Kelley, the wife of Charles B. Kelley.

*E. Fisher*, for the trustee.

*F. A. Fisher*, for Walter H. Howe in his individual capacity, and Bertha L. Howe.

*F. N. Wier*, for Hudson Kelley, a minor under guardianship, and Charles B. Kelley, administrator of the estate of Nellie F. Kelley.

BARKER, J. All parties agree that the notes for $37,500 with interest to the date of the testator's death are to be deducted from the share of his daughter Nellie and reckoned as part of her one third. All of these are obligations to the testator owing from Charles B. Kelley individually and so within the plain meaning of the clause giving the testator's property equally to his three children at the decease of his wife, with certain deductions from the share of his daughter Nellie, to be reckoned as part of her one third.

1. The two other children contend that there should be other deductions because of the testator's relation to the firm of C. B. Kelley and Company as partner and creditor, and under the direction so to deduct and reckon whatever at the testator's death should be due him from the firm including the testator's liability on account of indorsements for it.

The firm was formed on June 28, 1892, and continued until February 11, 1898, when it was dissolved by a written agreement of the individual partners providing how its affairs should be liquidated. The will was executed on April 24, 1896, and the testator died on February 17, 1898.

When the firm was formed the testator paid in the sum of $10,000 as capital which with interest was to be deemed a debt due to him from the firm. At the end of the first year's business $4,078.18 was credited to him as his share of profits. After the first year the business was conducted at a loss. At the date of the will the total indebtedness of the firm to its partners and others was $162,342.47, and the testator was an indorser on $28,000 of firm notes and had a credit on its books of $14,305.84. On December 31, 1897, the total indebtedness of the firm was $240,298.21, and the testator had a credit on its books of $41,255.84, made up of his original contribution to capital, his first year's profits, and of sums which he had paid out in taking up or caring for promissory notes of the firm on which he was indorser.

By the liquidation agreement which dissolved the firm on February 11, 1898, the testator and another partner assumed the firm debts, and conveyed to Charles B. Kelley the third partner, certain lands, mills, machinery, fixtures, appliances, and tools, and Charles B. Kelley sold to the two partners all other property of the firm and agreed to give his personal services without compensation to liquidate the firm business and further agreed to pay the two partners the sum of $42,000 in eighty-four notes of $500 each upon time one half of which notes were made to the testator. The business of the firm has been liquidated in accordance with this agreement.

The petition does not state the value of the property which by the terms of the agreement of February 11, 1898, passed to Charles B. Kelley nor of that which passed to the two other partners of whom the testator was one, nor the amount of money which the testator and his executors have paid out in performance of the obligation to assume and pay with the other partner the debts of the firm. But we assume that the testator suffered a heavy loss through his connection with the firm, and that up to the time of its dissolution, there was due to him from the firm,

including as such indebtedness the amount of notes on which he was liable as an indorser, a much larger sum than the amount of the notes received from Charles B. Kelley under the liquidation agreement.

We are of opinion that no deduction is to be made from the share of the daughter Nellie on account of the testator's relations with the firm of C. B. Kelley and Company, except of the notes of Charles B. Kelley held by the testator at his death and which whether arising from firm affairs or otherwise are said in the petition to amount to the sum of $37,500. The daughter Nellie was not a member of the firm, nor a debtor of the testator. If he saw fit to prosecute business as a member of a firm, that was not a reason why he should charge to his daughter whatever he might lose in connection with the business. The fact that his daughter's husband was also a member of the firm might naturally lead the testator to reckon as part of her share what the firm might be owing him at his death. Such indebtedness would be property, valuable or not as the case might be, and property which if owned by him at his death must be dealt with in the settlement of his estate. But if the firm should be dissolved in his lifetime, although he might have rights and property growing out of his connection with it, it could not in the ordinary meaning of words be said that at his death anything was due him from the firm. The effect of the dissolution and of the liquidation agreement was to extinguish the previously existing indebtedness of the firm to him, and to give him in place of it his half of the assets other than those conveyed to Charles B. Kelley, and his half of the latter's notes, and after that agreement was executed no payment of his of a firm debt created in him a debt from the firm, because of his agreement to assume and pay that debt for the consideration and upon the terms stated in the agreement. The agreement having been made, carried out so far as it could be up to the time of his death, the testator then had no property which could be described as something due him from the firm. He had a half interest in some property which had constituted a part of the firm's assets, an interest in Charles B. Kelley's agreement to give his services in the liquidation without pay, and an interest in the other partner's agreement to assume equally with himself

the debts of the firm, and his half of the $42,000 in notes, and having these several properties nothing was then due him from the then former firm of C. B. Kelley and Company.

2. As the deduction is to be of whatever was due the testator at his death, and as the child from whose equal share it is to be taken was not a debtor of the testator's, interest on the $37,500 of notes to be deducted is to be reckoned only to the time of the testator's death. See *Taylor* v. *Taylor*, 145 Mass. 239.

3. As the amount of the fund for distribution is so large that there is no probability that the amount to be deducted and reckoned in the share of the daughter Nellie can equal one third of the fund we express no opinion upon the questions which contemplate the possibility of an excess of the amount to be deducted over one third of the fund.

4. Upon distribution of the fund the administrator of the estate of the daughter Nellie will be entitled to receive as such administrator the notes of Charles B. Kelley deducted from and reckoned in her one third. The petitioner should indorse them without recourse.

5. The $37,500 of the notes, with interest to the death of the testator is to be reckoned in ascertaining the whole fund to be divided.

6. We are asked to instruct the petitioner whether the title to the real estate of which the testator died seised is vested in the plaintiff as surviving executor or trustee and whether he has the power under the will to sell and convey said real estate for the purpose of converting it into money to make a division in accordance with the third clause of the will.

Upon this question no argument has been addressed to us upon one of the two briefs submitted, and the only argument upon it in the other brief is merely a statement that a sale of the real estate will be necessary in order to make the division and that the question of the present power of the petitioner as surviving trustee to make such sale depends primarily on the fact whether or not the trust terminated at the decease of Mrs. Howe. It is clear that it is the duty of the petitioner to proceed to make a final division of the trust property. It is not certain that by agreements between the parties entitled to share in the division a sale of land may not be made unnecessary. If

such a sale becomes necessary it can be made under the provisions of R. L. c. 147, § 15, or of those of R. L. c. 147, § 20.   If in future it shall appear to the petitioner that he cannot reasonably make the division without making a sale under the power given in the second clause of the will the parties may submit new briefs upon that question.

*Decree to be entered in accordance with opinion.*