CHARLES H. SIBLEY, administrator with the will annexed, *vs.* IDA MAXWELL, executrix, & others.

Worcester. January 29, 1909. — June 26, 1909.*

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Devise and Legacy. Interest. Equity Jurisdiction,* Bill for instructions. *Words,* "Annual interest."

In a suit in equity by an administrator with the will annexed for instructions, it appeared that the testator by his will, after making certain provisions, directed that the residue of his estate should be distributed among his wife and his three children "to share equally and alike." One of these children was his son H. As to the share of H. he gave, in a separate clause, the following direction: "At this date and time of making this instrument there stands on my books, an account against my son H. January 1st 1882 amounting to $13,959.14, which debt has been created by my endorsing of the paper of the firm of R. D. & Co. of which firm my son H. was a member and at whose request and for his benefit the endorsements were made and the firm having failed to pay their notes I was compelled to do so. And my son H. acknowledges that the principal and interest is rightly due from him; therefore I request that in making an inventory of my estate my executors include the amt above written, $13,959.14, with annual interest at the rate of 6 pr cent. pr annum, and that in paying out the legacies, the amount found on the account against H. shall be

---

* The opinion in this case was withdrawn on an application for a rehearing. This was denied on September 7, 1909, when the opinion was returned to the Reporter.

applied as a proportion of his interest in my estate." The will was dated in January, 1882. The testator died in August, 1899. The account at the first date showed a balance as stated in the clause above quoted. Before the death of the testator, after proceedings in insolvency against the insolvent firm, a credit of a dividend was posted on the testator's books as received on H.'s account and the final balance was charged off to expense account, which the evidence showed to be analogous to a profit and loss account. It appeared that, for at least two years, interest at the rate of six per cent per annum was compounded and charged in H.'s account by the testator. There was evidence that the testator joined in a composition with the creditors of H.'s insolvent firm, which would have operated as an extinguishment of the indebtedness, and this also, at the time of the testator's death, would have been uncollectible by reason of the statute of limitations. The only payment from H. ever received by the testator was the dividend which he credited on the account. *Held*, that in the provision above quoted the testator had in mind not the collection or payment of a debt but equality in the distribution of his property, and that from the share of the testator's son H. there should be deducted the sum named by the testator as due from H. on January 1, 1882, diminished only by the amount of the dividend which the testator received from H.'s insolvent firm, with compound interest at the rate of six per cent per annum on the full amount named up to the time that the dividend was received and thereafter on the balance.

Although the phrase " annual interest" uncontrolled by other words means simple interest and nothing more, the expression "with annual interest at the rate of six per cent per annum," used in a direction in a will in reference to an account on which interest has been compounded and charged at that rate for at least two years, may be held to mean that the account shall bear compound interest.

On a bill for instructions an executor is entitled to instructions only as to his present duties.

On a bill for instructions an administrator with the will annexed is not entitled to instructions from this court as to items in the accounts of the original executor *of the same will, then deceased, while the question of the allowance of those* accounts still is pending in the Probate Court.

BILL IN EQUITY, filed in the Probate Court for the county of Worcester on January 30, 1908, by the administrator with the will annexed of the estate of Chester A. Dresser, late of Southbridge, for instructions.

The bill alleged

First. That the will of said Chester A. Dresser was approved and allowed on May 9, 1902; that under paragraph four of that will, the residue of the estate was given in equal portions of one fourth each to Hannah M. Dresser, his widow, and to Mary C. Edwards, Franklin D. Dresser and Henry B. Dresser, his children; that Franklin D. Dresser died testate, after the death of Chester A. Dresser, his widow, now Ida M. Maxwell, being named as executrix of his will; that the fifth paragraph of said will was as follows:

" At this date and time of making this instrument there stands on my books, an account against my son Henry B. Dresser January 1st 1882 amounting to thirteen thousand nine hundred and fifty-nine and 14/100 dollars $13,959.14, which debt has been created by my endorsing of the paper of the firm of Randall Daffin & Co. of which firm my son Henry B. Dresser was a member and at whose request and for his benefit the endorsements were made and the firm having failed to pay their notes I was compelled to do so. And my son Henry B. acknowledges that the principal and interest is rightly due from him ; therefore I request that in making an inventory of my estate my executors include the amt above written, $13,959.14, with annual interest at the rate of 6 pr cent. pr annum, and that in paying out the legacies, the amount found on the account against Henry B. Dresser shall be applied as a proportion of his interest in my estate."

That Henry B. Dresser died on December 13, 1895, leaving as issue Henry C. Dresser, Frank G. Dresser, Robert B. Dresser, Edith A. Dresser and Richard Dresser, all of whom were made defendants ; that it was contended by said issue that said account against Henry B. Dresser was adjusted by the testator subsequent to the making of said will and that said issue were therefore entitled to their full share in the estate of the testator and that no set-off against or deduction from said one fourth part should be made because of said account; that it was contended by other legatees under said will that said account was not adjusted and that the share of the issue of said Henry B. Dresser in said estate should be diminished by the amount of said account with interest thereon.

Second. That it appeared from the records in said estate that various sums of money and certificates of stock in the Central Mills Company had at various times been paid over and delivered to certain legatees under said will, namely, Hannah M. Dresser, Franklin D. Dresser and Ida Maxwell, executrix, and Mary C. Edwards.

Third. That the plaintiff was in doubt as to whether or not the account named in the fifth paragraph of said will should be set off against the share of the issue of Henry B. Dresser, and was also in doubt as to what rate of interest, if any, should be

charged against the parties named in the second paragraph of the will upon the amounts which it might appear said parties had received.

Fourth. That the plaintiff had in his hands a considerable amount of personal estate which it was his duty to distribute among the residuary legatees in such amounts as they might be entitled thereto.

The bill prayed for instructions,

First. As to whether or not under said fifth paragraph of said will any deduction should be made from or set off against the share of the issue of said Henry B. Dresser, and if so, how much.

Second. As to what rate of interest, if any, should be charged upon the payments of money and delivery of stock which should be proven to have been made to the parties named in the second paragraph of the bill and for such further instructions as to the distribution of said estate as to the court might seem proper.

Chester A. Dresser died on August 15, 1899. A copy of his will as allowed on May 9, 1902, was annexed to the bill as follows:

" Be it remembered that I, Chester A. Dresser of Southbridge in the county of Worcester and Commonwealth of Massachusetts, being now of fair health and of sound and disposing mind and memory do hereby make publish and declare this my last will and testament on this twenty-first day of January in the year of our Lord one thousand eight hundred eighty two.

" And in the first place I give and bequeath unto my beloved wife Hannah Maria Dresser for her own use and behoof the sum of thirty-five thousand dollars $35,000 meaning to include in said sum the property which she had at her marriage and has brought to my estate. I also give to her for her use during her life, the homestead estate where I now live including the lot purchased of Jedediah Marcy.

" I also give and bequeath to my said wife all the household furniture, and crockeryware, and silver, the pictures and ornaments, and other articles in the house used for housekeeping purposes. [The rest of this clause related wholly to the provisions made for the testator's wife.]

" Secondly. In case Edward D. Reynolds, the son of my said

wife, survives me and my said wife I give and bequeath unto him whatever sum may be due to my said wife as shown on my books and papers. Said sum to be paid to him out of my estate upon the decease of my said wife the same being an equivalent for the money which my said wife has brought to my estate, and which my said wife's son is therefore justly entitled to receive therefrom.

" Thirdly. I order and direct the executors hereinafter named as soon as may be after my decease to pay out of my estate all my just debts and funeral expenses, and make such improvements as they may deem necessary or proper on my lot in the cemetary and place headstones at my grave like those at the graves of my deceased wives, paying all expenses therefor out of my estate.

" Fourth. All the rest, residue and remainder of my estate of which I shall die seized of and possess be the same real, personal or mixed and left after carrying out the provisions hereof, I give devise and bequeath unto my said wife and my three children, Henry B. Dresser, Mary C. Edwards, wife of Stephen K. Edwards, and Franklin D. Dresser to share equally and alike, the issue of any one of my children who may be dead at my deceased to take by right of representation

" To have and to hold the same to them and to their use and behoof in fee simple for ever.

" Fifth. . . . [This paragraph is printed above under the first heading of the plaintiff's bill, and it also is quoted in the opinion.]

" Sixth. I do hereby constitute, name and appoint my said son Henry B. Dresser and my said wife Hannah Maria Dresser to be the executors of this my last will and testament. And it is my wish that my said executors may be exempt from giving bonds or sureties on their official bonds for the discharge of their duties. And for the more expeditious and proper way of settling and distributing my said residue of my estate among my said legatees, I do hereby authorize and empower my said executors to convert the same into money and to distribute and pay the share which each is entitled to under this will in money, and for that purpose I do authorize and empower them to bargain and sell at public auction or private sale as they shall deem best for

the advantage of my estate any and all of my estate real or personal, and to make, execute and acknowledge and deliver all necessary deeds, instruments and papers to convey the same to the purchaser or purchasers thereof. And upon the same being so converted into money to divide the same into shares as required by this will and pay out the same to those entitled to receive it.

" But nothing herein contained shall be construed to prevent the said legatees from dividing among themselves any part or all of my residuary estate in case they all agree upon such division and distribution without sale thereof.

" So far as any trust of any of my estate under the provisions of this will are created it is my will that my said executors shall discharge the same according to the terms thereof.

" And to my executors I would suggest that in disposing of the large blocks the Edwards House and C. A. Dresser House, Hotel, it might be favorably done by forming a syndicate and dispose of in shares.

" In witness whereof I have hereunto set my hand and affixed my seal on the day and year above named in the presence of the persons named below whom I, the said Chester A. Dresser, called as witnesses thereof in their presence also publishing and declaring the same to be my last will and testament.

" Chester A. Dresser."  (seal)

[Here followed an attesting clause with the names of three witnesses.]

A copy of a codicil, also annexed, was as follows:

" I Chester A. Dresser of Southbridge make this codicil to the foregoing will, dated the 1st day of January, A. D. 1882, which I hereby ratify and confirm in all respects except as changed hereby.

" Whereas by the first clause of my said will I give and bequeath unto my said wife the sum of thirty-five thousand ($35,000) dollars, meaning to include in said sum what property she had at the time of her marriage and brought to my estate, I now give and bequeath unto my said wife thirty-five thousand ($35,000) dollars without any reference to what she had at time of her marriage and brought to my estate.

" In witness whereof I have hereunto set my hand and seal this 2nd day of January, A. D. 1883.

                 " Chester A. Dresser."    (seal)

[Here followed an attesting clause with the names of the same three witnesses.] The other material facts are stated or sufficiently referred to in the opinion.

In the Probate Court *Forbes*, J., made a decree ordering, among other things, that the legacy to the issue of Henry B. Dresser be paid to them " without any deduction being made therefrom on account of said indebtedness." Ida Maxwell, executrix of the will of Franklin D. Dresser, Edward D. Reynolds and Mary C. Edwards appealed. The appeal was heard by *Loring*, J., who made the following decree:

" The will of Chester A. Dresser intended and provided for the division of the residue of his estate among his widow and his three children (or respective issue) sharing equally and alike. The account between the testator and his son Henry is to be dealt with in determining this division. On the first day of January, 1882, the son Henry owed the testator, as appeared on the testator's books of account and by his will, the sum of thirteen thousand nine hundred fifty-nine and 14/100 dollars. To this sum interest thereon at the rate of six per cent. per annum, with annual rests, reckoned to the 15th day of April, 1884, is to be added. Therefrom the sum of eight hundred thirty-seven and 32/100 dollars received by the testator on, or as of, April 15, 1884, in connection with the closing of the affairs of Daffin and Dresser, is to be deducted and this is the only deduction to be so made. The balance, with compound interest thereon at six per cent. per annum to August 15, 1900, is an amount which is to be added to the residue of the testator's estate and deducted from the one-quarter share of the son Henry (or his issue) in the residue, plus the amount of said account, as provided by the fifth clause of the will.

" The residue of the estate and the shares of those interested therein are to be ascertained as of August 15, 1900. From the gross assets of the estate should be deducted all amounts properly paid or transferred under the first, second and third articles of the will. All income earned by the remaining assets up to

August 15, 1900, should be added to said remaining assets as part of the residue. The expenses of administration should be deducted from the gross amount of the residue so determined and the net amount so obtained is the net residue of the estate. To this net residue should be added the balance of the account with the son Henry, determined to August 15, 1900, as aforesaid. If one-fourth of the combined net residue and the amount of the said account against Henry is greater than the amount of said account, then the difference between the two is the share of the residue to which the children of said Henry are entitled; and in this case the share of each of the other three distributees is one-fourth of said residue including the amount of said account against Henry.

"If, on the other hand, the amount of the said account against Henry is equal to or greater than one-fourth of the said combined net residue and account against Henry, the said residue, without adding the amount of the account against Henry, is to be divided into three parts and the children of Henry have no share or interest therein.

"In either event those interested in the residue (in the proportions ascertained as aforesaid) share in any income earned by the residue from and after August 15, 1900, in the same proportions in which they share in said residue as herein decreed.

"Any property not reduced to cash by the executor or administrator should be taken at such valuations as the parties interested may agree upon, or in the absence of agreement at the inventory valuations, or such other as the Probate Court may determine.

"In the casting and settlement of accounts all the advances heretofore made by the special administrator and by the executrix shall be disposed of as follows: At the time of each advance the advance shall be charged to the share of the legatee in the income then earned by the residue to which the legatee receiving the advance is entitled, if the share of that income to which that legatee is entitled equals or exceeds the sum then advanced. If the sum advanced exceeds the share of income then earned to which that legatee is entitled, the amount paid him or her over and above the income then due him or her is to be charged as a partial distribution of the principal of the residue, and that

legatee's share in the residue and in the income shall be reduced accordingly.

" If the consent of all interested in the residue was not given to the transfer of the shares transferred on July 25, 1904, those shares must be returned to the estate, together with the dividends since received thereon, and interest on the amount of said dividends since the receipt thereof respectively.

" The decree of the Probate Court appealed from is reversed and the cause remanded to said court for further proceedings in accordance with this decree."

The children of Henry B. Dresser appealed. Ida Maxwell, executrix of the will of Franklin D. Dresser, also appealed. The evidence was reported by a commissioner.

*F. Rackemann*, for Ida Maxwell, the executrix of the will of Franklin D. Dresser.

*J. M. Cochran*, for Edward D. Reynolds.

*John Chipman Gray & H. E. Bolles*, (*J. C. F. Wheelock & R. B. Dresser* with them,) for the children of Henry B. Dresser.

*J. R. Thayer*, (*H. H. Thayer* with him,) for Mary C. Edwards.

BRALEY, J. The testator, after making certain provisions for his wife and stepson and for the payment of debts, directed, in the fourth clause of his will, that the residue of his estate should be divided between his wife and his three children by a former marriage, " to share equally and alike." But in the fifth clause, as to the share coming to his son Henry B. Dresser, he further declares, that, " At this date and time of making this instrument there stands on my books, an account against my son Henry B. Dresser January 1st 1882 amounting to thirteen thousand nine hundred and fifty-nine and 14/100 dollars $13,959.14, which debt has been created by my endorsing of the paper of the firm of Randall Daffin & Co. of which firm my son Henry B. Dresser was a member and at whose request and for his benefit the endorsements were made and the firm having failed to pay their notes I was compelled to do so. And my son Henry B. acknowledges that the principal and interest is rightly due from him; therefore I request that in making an inventory of my estate my executors include the amt above written, $13,959.14, with annual interest at the rate of 6 pr cent. pr annum, and that in paying out the legacies, the amount

found on the account against Henry B. Dresser shall be applied as a proportion of his interest in my estate." It is the contention of the children of Henry, who died before his father, that they are entitled to one quarter of the residue without any deduction of this amount, as the indebtedness was either discharged by a compromise with creditors at common law, or has been paid in part by the conveyance of the house and land, or was cancelled and extinguished by the testator. The money, with the exception of a trifling amount, was advanced from time to time, to aid a mercantile firm of which his son was a member, and if the transaction is viewed strictly as a loan between debtor and creditor, the composition effected by the firm, in which the testator joined, operated as an extinguishment of the indebtedness, which also would be uncollectible because outlawed at the testator's death. But the testator did not say as in *Rogers* *v. Daniell*, 8 Allen, 343, "that any legal debt due from either of said children to my estate at the time of my decease, shall first be deducted," and where it was held that by the language used he meant a debt which could be enforced in a court of law.

If a conveyance of the son's incumbered homestead had been made to him for an ostensible consideration which he deducted from the firm's indebtedness, and then accepted a percentage in composition on the balance, the evidence leaves no doubt, that in taking title, which he later conveyed without consideration to his son's wife, the testator acted not only at the son's request, but for the apparent purpose of securing to him and his family the equity in the property. In fact, whatever the effect of these transactions may have been on their purely contractual relations, the only payment the testator ever received was the dividend which he duly credited on the account. At his death, with this exception, the principal of the account remained the same as at the date of the will. The testator throughout article fifth speaks of "an account against my son Henry," the amount of which is to be deducted, and, although he says, "which debt has been created . . ." when referring to the origin of the expenditure, it is immaterial whether the pecuniary aid furnished is treated as a debt not to be collected from the debtor, or as in the nature of an advancement to be taken out of the share of the legatee, for it was not the collection or payment

of a debt, which the testator had in mind, but equality in the distribution of his property. *Bacon* v. *Gassett,* 13 Allen, 334. *Cummings* v. *Bramhall,* 120 Mass. 552. To give to Henry, or to his children by right of representation, an equal share in the residue, without regard to what had already been done for him, would permit him, or them, to obtain a larger portion than his stepmother or sister or brother, and defeat the purpose of the testator, who must be recognized as the sole judge as to the proportionate share which each child was to receive.

In the will, which speaks only from his death, the indebtedness is stated at a fixed sum to be inventoried as a part of the estate, and then the amount found on the account is to be deducted from Henry's portion. The subsequent declarations of the testator, whether oral or written, as to the meaning to be given to the language employed, or his object in making this testamentary disposition, were inadmissible to contradict or vary its terms. *Foster* v. *Smith,* 156 Mass. 379. *Polsey* v. *Newton,* 199 Mass. 450, 455. The testator's purpose having been declared, and the amount designated, if nothing further appeared, the court could at once proceed to a decree for which the requisite data had been fully supplied. If, however, the charges as shown by the books of account, which by reference are made the source of information, not only for the executors, but for the legatees, were disputed as partially incorrect or wholly erroneous, resort could be had to oral evidence to show such inaccuracies, for the purpose of ascertaining the exact sum outstanding at his death. *Hoak* v. *Hoak,* 5 Watts, 80. The will was dated on January 21, 1882, and the testator died on August 15, 1899. The account on the first date showed a balance as stated in the fifth clause, but during the interval the proceedings in insolvency, to which sufficient reference has been made, intervened. A credit of the dividend was then posted, and the final balance charged off to expense account, which in bookkeeping appears from the evidence to be analogous to a profit and loss account. It is earnestly contended, that by this entry the testator intended to cancel or obliterate " the amount found on the account against Henry B. Dresser." But even then, if the fifth clause is read as containing the words " if not repaid or discharged at my death," this entry does not cut down the testator's primary meaning and

purpose, as there had been no actual repayment or acquittance. If in connection with this entry the testator's letter to Mrs. Spaulding,* a little over a year before his death, is treated as disclosing his understanding of the account, and not of the will, he does not state that it has been liquidated or cancelled, but the language used is fully consistent with the assurance given, that upon his decease the liability would not exist as an enforceable debt. If the letter, however, is treated as a subsequent declaration or admission, that notwithstanding the will, which at his death remained unchanged, his estate was to be distributed without regard to the fifth clause, it was inadmissible. It formed no part of the instrument, not having been referred to in the will, which having been admitted to probate had been conclusively established. *Foster* v. *Smith*, 156 Mass. 379. *Jaques* v. *Swasey*, 153 Mass. 596, 597. *Lincoln* v. *Perry*, 149 Mass. 368. *Best* v. *Berry*, 189 Mass. 510. *Brown* v. *Wright*, 194 Mass. 540. But, whatever may be said as to the meaning or purpose of the letter, there was further evidence on the question of cancellation, from which the single justice was warranted in finding that, even if the account was closed, the testator still regarded the balance as justly outstanding in the testamentary distribution of his estate.† *Cummings* v. *Bramhall*, *ubi supra*. *Howe* v. *Howe*, 199 Mass. 598, 601.

The will further directs, that for appraisal and distribution " annual interest" at a specified rate is to be computed. It is true, as the appellants urge, that interest is not chargeable on advancements, and if the relation is viewed as purely contractual, the debt has been legally discharged. But notwithstanding these arguments which are sound where applicable, they must give way to the universal rule, that the intention of the testator governs. *Bacon* v. *Gassett*, 13 Allen, 334, 337. *Taylor* v. *Taylor*, 145 Mass. 239, 241. It may be assumed he

* This letter was dated June 22, 1888. The passage referred to was as follows: " I presume you may not be aware of the fact that of my available means, the amount of principle and interest for the past ten years which I have paid for Henry's interest is more than $20,000 and if the others of my family had recd. an equal amt. quite a fortune would have been absorbed. The amt. of indebtedness created at the period in question has not been liquidated but the indebtedness against Henry has been settled on my books so that it will not appear against him in my estate should he outlive me."

† This refers to declarations made by the testator to his counsel Mr. Cochran in 1895 relating to a draft of a new will.

could have advantageously invested the principal, and thus increased the value of his estate. Quite apart, however, from any reason by which he may have been actuated, the direction is explicit, and the question is, whether interest is to be compounded. At the date of the will it had been settled by our decisions, in contracts for the payment of money, that " annual interest " meant simple interest and nothing more. *Henry* v. *Flagg,* 13 Met. 64. *Ferry* v. *Ferry,* 2 Cush. 92. See also *Hodgkins* v. *Price,* 141 Mass. 162, 164 ; *Lewin* v. *Folsom,* 171 Mass. 188, 192 ; *Tisbury* v. *Vineyard Haven Water Co.* 193 Mass. 196, 198. If this were the only language used, it would not be impossible to say that the testator understood and used the phrase in this sense. *Gray* v. *Whittemore,* 192 Mass. 367. *Coe* v. *Hill,* 201 Mass. 15. But he further says, " at the rate of six per cent per annum," and, for at least two years, interest at this rate was compounded and charged in the account. We are compelled to construe the whole direction, when read with the extrinsic evidence, as meaning that the testator intended that the account as it stood should bear compound interest. The total amount when thus ascertained forms the sum to be inventoried, and to be set off from the share coming to Henry's children.

Although what has been said disposes of the more important questions, Ida Maxwell, executrix and residuary legatee of Franklin D. Dresser, appeals from so much of the decree as gives directions, if the distributions are not found to have been assented to, for the return to the plaintiff, who is administrator with the will annexed, of certain shares of stocks forming part of the estate, previously distributed, and for an accounting of dividends subsequently received, and interest on the advancements. In the second paragraph of the sixth clause of the will the testator says : " But nothing herein contained shall be construed to prevent the said legatees from dividing among themselves any part or all of my residuary estate in case they all agree upon such division and distribution without sale thereof." It appears that, even if a partial division of the residue, including nearly all of the shares of corporate stock at the inventoried valuation, between the legatees has been attempted, the portions of the accounts of the executrix containing the advancements have not been allowed. The present suit, although begun in the

Probate Court, is brought in equity under R. L. c. 162, § 5, for the construction of the fifth paragraph of the will, and for instructions " as to what rate of interest, if any, shall be charged upon the payments of money and delivery of stock which shall be proven to have been made to the parties named in the second paragraph of this petition and for such further instructions as to the distribution of said estate as to the court may seem proper." But the accounts of the executrix, who has since deceased, are not before us on an appeal for either allowance or revision, and, no question of probate accounting being involved, the plaintiff is entitled to be instructed only as to his present duties. *Peabody* v. *Tyszkiewicz*, 191 Mass. 317, 322. The record as to these items shows that the accounts are still pending before the Probate Court. If finally allowed, the plaintiff has no further concern with this part of the estate, for which he would not be accountable. If not confirmed, what further steps he should then take to charge the estate of the accountant with the amount of the inventory, and other assets received, but not properly accounted for, or to recover the property with the dividends, or its value with interest, or in his own probate account of the remaining estate to adjust whatever differences are necessary for an equal distribution, should be left until appropriate action has been taken in that court, from whose decision the questions proposed may be brought to this court by appeal. *Cummings* v. *Cummings,* 128 Mass. 532, 533. *Muldoon* v. *Muldoon,* 133 Mass. 111. *Bullard* v. *Chandler,* 149 Mass. 532, 538. *Bullard* v. *Attorney General,* 153 Mass. 249, 250. It is furthermore not shown by the appeal, nor has the question been suggested by counsel, that the legatees are in controversy over the advancements, or that, if allowed, the balance of the estate remaining to be distributed will not be ample to give to Henry's heirs their proportionate part, and until this appears to be insufficient there would be no occasion to go further.

The decree, when modified in the details to which we have adverted, is affirmed.

*So ordered.*