WINTHROP C. ADAMS & others, executors, *vs.* WINTHROP C. ADAMS & others.

Suffolk.    February 4, 1941. — April 5, 1941.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Contract,* Implied. *Devise and Legacy,* Cancellation of debt. *Personal Property,* Ownership.

Evidence of the circumstances in which a mother at her son's request had her stockbroker pay to the son's stockbroker a sum sufficient to pay his indebtedness to his stockbroker on a margin account and receive the securities which had been deposited by the son with his stockbroker as collateral for his account, and directed her stockbroker thereafter to "carry the debit and these securities" in a new account in her name, warranted findings that a debt relation did not arise between the mother and son within a provision of her will that all "debts due" her from her children should be cancelled, and that, upon payment by the executor of the mother's will of a balance due on such account with her broker, the collateral securities belonged to her estate.

PETITION, filed in the Probate Court for the county of Suffolk on March 21, 1940, for instructions.

The case was heard by *Prest,* J.

*F. S. Deland,* stated the case.

*B. C. Perkins,* for Winthrop C. Adams.

*J. F. Groden,* (*J. R. Spence* with him,) for Ethelind Adams.

*J. B. Dolan,* guardian *ad litem, pro se.*

RONAN, J.   The executors of the will of Ella C. Adams seek instructions as to the ownership of certain securities, which they acquired by paying to a stockbroking firm the debit balance carried by this firm in an account opened by the testatrix by taking over an account that the respondent Winthrop C. Adams, her son, had with other stockbrokers; and as to whether any indebtedness from Winthrop C. Adams to the testatrix has arisen out of the carrying of this account by her, and, if such indebtedness existed, whether it was cancelled by the third clause of her will. The Probate Court by its decree instructed the executors that no debt was due from Adams to the estate in reference to this transaction, and that the securities were assets of the estate.   Adams appealed from this decree.

The judge made a report of the material facts in substance as follows: Ella C. Adams died July 16, 1938, leaving two daughters and a son.   Winthrop C. Adams and two others are the executors under her will, which was executed February 16, 1931.   The will contained the following provision: "THIRD.   I request that all notes of my children held by me and all debts due me from them shall be cancelled."   At the time of her death Winthrop C. Adams owed his mother $9,000, which was represented by three notes.   Nothing was owed by the daughters to their mother.   Winthrop C. Adams was carrying a margin account with his brokers who, early in October, 1930, notified him that, unless additional collateral was furnished, the account would be closed out.   He sought aid from his mother.   She consulted counsel and, as a result, the son on October 10, 1930, gave her a letter authorizing her to take over his account, together with the collateral, and to put this collateral, which was to be marked with his initials, "W. C. A.," into her account.   On the same date, the testatrix notified her brokers to pay from her account the debit balance on the account of her son with his brokers, and to receive the collateral on his account, and they were then to "carry the

debit and these securities in my name, identifying the account with the initials 'W. C. A.' after my name." Her brokers paid the son's brokers $33,670.95 and set up a new account with the testatrix in accordance with her instructions. The account when taken over was under margined. Her brokers looked to her as the one responsible to them. She had large and ample collateral with them in her other accounts, and they never called upon her to furnish other collateral or to pay anything on this account. Dividends on the securities in this account were all credited to the account, except in one instance where the shares of one corporation stood in the name of the son and the dividends on these shares were received by him. He had no authority to trade in this account but from time to time certain changes were made in the collateral at the suggestion of the son to his mother's counsel. The son did not put any money or securities into the account while it was carried by his mother's brokers. He had frequently spoken to his mother about his inability to pay any part of the indebtedness and she told him "not to worry about it and that it would work out all right some time." The executors on October 10, 1938, paid the brokers $42,038.47 and received the collateral securities. The judge found that the son, who was both a respondent and one of the executors, "did not disclose to the court what he put into the broker's account when it was opened, nor what purchases and sales were made thereafter," and instructed the executors that there was no debt due from the son to his mother arising out of the stock account and that the securities belonged to the estate.

This appeal is here with a transcript of the evidence and a report of the material facts. It is our duty to examine the evidence and come to our own conclusions, but we do not set aside findings of the judge unless they are shown to be plainly wrong. *Trade Mutual Liability Ins. Co.* v. *Peters,* 291 Mass. 79. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398. The appellant attacks the finding that there was no evidence that the son had borrowed any money from his mother unless he gave her a note. All that that

finding means is that there was no satisfactory proof that he ever got a loan without giving a note. *New Bedford Cotton Waste Co.* v. *Eugen C. Andres Co.* 258 Mass. 13. *Gowell* v. *Twitchell*, 306 Mass. 482. The report does not set forth categorically what the agreement was between the son and his mother in pursuance to which she took over the account, but it fully sets forth the instructions by the testatrix to her counsel and the documents by which the account was transferred. If the appellant believed that the report of the material facts was not sufficiently full he should have requested the judge to amplify his findings. *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209. *Greeley* v. *O'Connor*, 294 Mass. 527. *Boston* v. *Dolan*, 298 Mass. 346.

The testatrix could have advanced enough money or securities to her son's brokers in order to enable him to continue the account or she could have paid the debit balance and permitted him to obtain the collateral. She declined to do either. She did not desire to make any loan to him. His collateral, however, included stock in a corporation in which her family had long been interested and she probably did not want that stock sold by the brokers. Her principal purpose was to tide him over his difficulties. It was in such circumstances that she had his account taken over by her brokers upon her credit. The payment to his brokers upon her credit at his request could, if the parties so intended, constitute a loan from her to him. *Hare & Chase, Inc.* v. *Commonwealth Discount Corp.* 260 Mass. 134. *Finegan* v. *Prudential Ins. Co.* 300 Mass. 147. The parties were not dealing with each other as strangers. The mother was not seeking any personal advantage or private gain. She could have acquired all the collateral, with the exception of the Haskell Adams stock, at less than she paid when she took over the account. She never requested him to put anything in the account or to close the account. She permitted him to retain the dividends received on a part of the collateral. He could have acquired the collateral by paying the debit balance.

There is no testimony that the mother ever agreed to

charge him for any loss she might sustain. It may be that she would have turned over to him any profit that might have resulted. The record does not show that the parties ever discussed the distribution of profits or the payment of losses. She had carried the account for nearly eight years. She had dealt with her brokers for many years and, while this account was pending, they had other accounts with her and had in their possession securities belonging to her to the value of $600,000 or $700,000. They never made any requests upon her concerning the account in question. She was apparently content to have the account run along, hoping that some time he would pay the debit balance and take out the securities. Whether under all the circumstances a debt would result was a question of fact. *Hawkes* v. *First National Bank of Greenfield,* 261 Mass. 109. *Fennell* v. *Russell,* 282 Mass. 67. *Ramseyer* v. *Conlon,* 303 Mass. 270.

Even if we assume in favor of Winthrop C. Adams that the judge should have found that the parties intended that the mother should be reimbursed by him on account of losses, then it is not entirely clear upon the record that any loss had been incurred. No loss was sustained when she took over the account because the amount advanced was several thousand dollars less than the market value of collateral. Her counsel, who seems to have been familiar with her stock transactions, testified that the debit balance in this account at the time of her death could have been paid off by the collateral if a purchaser could have been secured for the Haskell Adams stock. It is true that the judge, none of the parties objecting, declined to hear other evidence as to the value of the collateral at the date of her death, on the ground that it was a matter for an accounting.

But if the debit balance exceeded the market value of the collateral when the testatrix died it does not follow that the excess constituted a debt from Winthrop C. Adams to the estate of his mother. The testatrix had entered into a contract with the brokers by which she became obligated to pay them whatever was due in carrying the account for her. Whether she would become liable to pay them anything depended upon the value of the col-

lateral, and the amount of liability would not become fixed until the collateral was sold and the account closed.   Her contract with the brokers remained executory while she lived, and the existence of any actual obligation to pay money to them and the amount due remained contingent while the account was pending.   The mere assumption of such a contractual liability by her with her brokers, with any contingent liability that might result, would not ordinarily be considered as a debt against him as that word was used in her will.   *Deane* v. *Caldwell*, 127 Mass. 242. *Bowditch* v. *Raymond*, 146 Mass. 109, 114.   *Currier* v. *Williams*, 189 Mass. 214, 218.   *Cotting* v. *Hooper, Lewis & Co. Inc.* 220 Mass. 273.   *Shaw* v. *United Shoe Machinery Co.* 220 Mass. 486.   *Towle* v. *Commissioner of Banks*, 246 Mass. 161.   *L. P. Hollander Co. Inc., petitioner*, 301 Mass. 278.

In this Commonwealth, the question whether an indebtedness existed between a legatee and the estate has usually arisen where the executor has retained out of the legacy a sum sufficient to pay what he claimed was a debt due to the testator.   *Rogers* v. *Daniell*, 8 Allen, 343.   *Taylor* v. *Taylor*, 145 Mass. 239.   *Bigelow* v. *Pierce*, 179 Mass. 331.   *Macomber* v. *King*, 288 Mass. 381.   *Old Colony Trust Co.* v. *Underwood*, 297 Mass. 320.

The will was executed a few months after she had taken over the account, and if she had intended to cancel any loss that might be sustained in carrying the account she could have made such a provision either in her will or in the codicil that she made in the summer of 1937.   An examination of the will shows an intent to treat her three children with substantial equality;  and while she specifically provided in the third clause for the cancellation of any notes and debts owed to her by her children — a provision which operated to the benefit of her son, who had given his mother three notes totalling $9,000 — yet the cancellation of debts to this amount might not materially interfere with her plan to have the children take substantially equal shares.   It can hardly be said, as Winthrop C. Adams contends, that the cancellation of over

$41,000 in addition to the $9,000 would be consistent with the intent of the testatrix to have her children share substantially equally in her estate. *Bacon* v. *Gassett,* 13 Allen, 334. *Cummings* v. *Bramhall,* 120 Mass. 552. *Howe* v. *Howe,* 184 Mass. 34. *Sibley* v. *Maxwell,* 203 Mass. 94.

There was testimony that the testatrix appeared to be solicitous about the inability of her son to pay the account at the stockbrokers and that a few months after she executed the codicil, she had inquired of her counsel when he thought her son would "be able to pay that debt" or "what he owed me." No ambiguity appears on the face of the will and this testimony could not be considered as varying or contradicting the terms of the will or as a declaration that any debt arising from the account should come within the third clause of the will. *Best* v. *Berry,* 189 Mass. 510. *Saucier* v. *Saucier,* 256 Mass. 107. *Mahoney* v. *Grainger,* 283 Mass. 189. But the circumstances existing and known to her at the time she made her will and codicil may be shown for the purpose of ascertaining the meaning of the language which she used. *George* v. *George,* 186 Mass. 75. *Lydon* v. *Campbell,* 204 Mass. 580. *Bullard* v. *Leach,* 213 Mass. 117. *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577. Such evidence might also tend to show her understanding of the nature of the account. *Sibley* v. *Maxwell,* 203 Mass. 94. There was no evidence that the mother ever requested the son to do anything in reference to this account while it stood in her name. She did not express any anxiety to him in reference to it. The judge found that she told her son not to worry about it as the matter would "work out all right." If she had the account in mind when she made the will and the codicil and, as the son contends, intended to discharge any indebtedness therefrom that might become due from him, then it would be hard to see why she should be disturbed over the account if it was to be cancelled by the will. In any event it was for the judge to determine what weight, if any, should be given to the testimony in question and to decide upon all the evidence whether the son was indebted to the estate. He found that he was not. We cannot say that such a

finding was plainly wrong.  *Boston* v. *Santosuosso*, 307 Mass. 302, 332, and cases cited.

Costs and expenses of this appeal as between solicitor and client are to be in the discretion of the Probate Court.

*Decree affirmed.*