FRANCIS J. GREELEY, guardian, *vs.* EDWARD J. FLYNN & another.

Plymouth.   May 16, 1941. — September 10, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Gift. Trust*, What constitutes, Of personal property, Parol trust. *Guardian*, Recovery of ward's property. *Equity Jurisdiction*, To enforce trust. *Equity Pleading and Practice*, Parties, Decree.

From findings by a master that the owner of a deposit in a savings bank standing in his name as trustee for his nephew intended to and did alone control the account and alone could make withdrawals, that he delivered the deposit book to the nephew's mother who gave it to the nephew, and that he intended that on his death the account should be payable to the nephew, a conclusion was required that the depositor did not intend to transfer ownership of the account to the nephew and did not make a valid gift thereof to him.

For the establishment of an informal express trust of a savings bank account standing in the name of the depositor as trustee for a designated beneficiary, both notice to the beneficiary or to some one in his behalf and at least implied acceptance on his part are essential.

Findings, that the owner of a deposit in a savings bank standing in his name as trustee for a designated beneficiary intended to and did retain control of the deposit and alone could make withdrawals therefrom, but intended also that on his death it should be payable to the beneficiary; that he delivered the bank book to the beneficiary's mother, who gave it to the beneficiary; and that thereafter he made several withdrawals from the account and gave them to the beneficiary, required conclusions that the beneficiary had notice of the trust and accepted the equitable interest created in him thereunder, and that thereby the trust was established.

A suit to establish ownership of personal property of an insane ward under guardianship should be brought in the name of the ward and not in that of the guardian.

In a suit in behalf of an insane person, in whose name a savings bank deposit stood as trustee for his nephew, to establish absolute beneficial ownership in the insane person, where the nephew in his answer claimed that a valid trust had been created for him and, upon an appeal by him from a decree for the plaintiff, it was established that the trust was valid and created an equitable interest in the nephew effective upon the insane person's death, the decree was reversed and a new decree was ordered appointing a new trustee to hold the deposit for the benefit of the insane person and the nephew.

BILL IN EQUITY, filed in the Superior Court on February 13, 1939.

The defendant Flynn appealed from a final decree entered by order of *Donahue, J.*

*J. A. Reilly,* for the defendant Flynn.

*C. J. Muldoon, (F. J. Greeley* with him,) for the plaintiff.

DOLAN, J. This is a suit in equity in which the plaintiff, as he is guardian of Nelly Conway, otherwise known as Nellie Conway, an insane person, seeks to compel the defendant Flynn (hereinafter referred to as the defendant) to deliver to him a savings bank book issued by the defendant Brockton Savings Bank in the name of "Nellie Conway, Trustee for Edward J. Flynn," and to compel the bank to pay over to the plaintiff the deposit represented by the savings bank book. The bank answering set forth that it had in its hands and possession the sum of $1,545.98 deposited on the account in question, and was holding the same "subject to the further orders of . . . [the] court." The defendant answering claimed the deposit as a gift from "Nellie Conway" and, in the alternative, that a valid trust of the deposit had been created by her for his benefit. The case was referred to a master. An interlocutory decree was entered confirming his report, and thereafter a final decree was entered that the defendant turn over and surrender the bank book in question to the plaintiff "guardian," and that the bank, upon presentation of the book of deposit by the plaintiff, transfer the account to him as guardian.

Material facts found by the master may be summarized as follows: Miss Conway was about seventy-three years old at the time of the hearing before the master. She came to the United States about fifty-seven years ago, and worked as "housemaid and cook" in New York and several places in Massachusetts. She was a resident of Brockton on September 9, 1935, when she was committed to the State Hospital in Foxborough. She had never married. The plaintiff was appointed guardian of her person and property on December 6, 1938. The defendant is her nephew. Prior to 1903 Miss Conway opened an account in her own name in the defendant bank. On January 21, 1926, the account

was transferred into the name of "Nellie Conway, Trustee for Edward J. Flynn." The balance at that time was $1,881.56. On May 4, 1933, she reported the bank book as lost or stolen. On June 12, 1933, the bank issued a new "pass" book under the same description as to the depositor. On October 9, 1933, she reported this book as "stolen." A new book was issued thereafter under the same designation. On the original ledger card these words were typewritten: "Book reported lost 5/4/33. Pay no money except to Nellie Conway, but if she dies it is to go to Edward J. Flynn." This notation was made by a teller at the request of Miss Conway on May 4, 1933. It does not appear upon the ledger cards which were made when the new books were issued. She "alone controlled the account and she alone could make withdrawals." She intended to retain control of the account during her life and that upon her death it should become payable to the defendant. She gave the bank book to his mother "about" November, 1933, and the latter gave it to the defendant. "Miss Conway had no bank book except the . . . [one] in question." After November, 1933, she made eight withdrawals from the account and gave the sums withdrawn to the defendant.

Notwithstanding the form of the rule to the master, instead of confining his reports to the facts found by him (see *Jameson* v. *Hayes*, 250 Mass. 302, 306), he has woven into the report certain evidence, stating that the defendant testified that Miss Conway asked him "at least one hundred times . . . to 'accept the bank book trust which . . . [she] created in 1926'; that he told her he did not wish to . . .; that she showed him the book a number of times and asked him to check it to see if everything was correct; that he saw the second advertisement of the lost bank book . . .; that in October, 1933, she told him the book was lost again and that she wanted him to accept 'the trust fund previously set up' and he replied 'All right . . .'; that on November 10, 1933, she asked him if his mother told him that she had left the bank book for him and that the money was his; that he thanked her; that the bank book had been in his home ever since; that he needed money from time to time after

that; that he had asked her to go to the bank and withdraw money on eight occasions and she had done so and given the money to him." The master also reported that the defendant's mother "testified that on a day in November, 1933, Miss Conway came to her house, took out her bank book and said, 'I have this fixed now for Eddie — the bank book is his — this is Eddie's and when he comes home give it to him and put it in a safe place'; that she replied, 'I'll put it in a safe place and when he comes home I will give it to him'; that she did so when he came home."

In argument the plaintiff has stressed other facts which the master could have found on the testimony of the defendant and his mother as to those conversations, but which the master was not obliged to find. His sole findings are those that have been stated already. He made no ultimate finding on the questions whether a valid gift of the deposit had been made by Miss Conway to the defendant or whether she had created a valid trust thereof. The conclusions of the judge implied in his decree are that, upon the specific findings of the master, she did neither. It is our duty to draw the proper inferences from the findings of the master unaffected by the conclusions of the judge. *Robinson* v. *Pero*, 272 Mass. 482, 484.

"It is settled . . . that an oral gift of a . . . savings bank book . . . and personal property of like nature, accompanied by actual delivery of the evidence of title to the donee with intent to pass title, and acceptance by the donee, will transfer ownership." *Millett* v. *Temple*, 280 Mass. 543, 549. *Mangan* v. *Howard*, 238 Mass. 1, 5. *Gowell* v. *Twitchell*, 306 Mass. 482, 487. *Ponlain* v. *Sullivan*, 308 Mass. 58, 59.

In the case at bar the only findings of the master bearing on the question of delivery of the book with the intention of making a gift thereof are that in November, 1933, Miss Conway gave the book to the defendant's mother who in turn gave it to him; that Miss Conway intended to retain control of the account and that "she alone controlled the account and she alone could make withdrawals"; that subsequent withdrawals were made by her and the sums withdrawn given by her to the defendant; and that she intended

that the account should become payable to the defendant upon her death. It seems obvious that these findings of the master would not warrant a finding by the judge that there was any delivery of the book by Miss Conway to the defendant or to anyone for him, with an intent on her part to pass title and thus transfer ownership to him.

The question remains whether upon the facts found by the master the proper conclusion is that Miss Conway created a valid trust of the deposit. It is settled that an express trust in personal property may be created and proved by parol. *Davis* v. *Coburn*, 128 Mass. 377, 380. *Stuck* v. *Schumm*, 290 Mass. 159, 163. It is also settled that there must be something more than the words that one is trustee for another; that there must be proof of an intent to create a trust; and that, while there is no need of delivery of a document creating the trust or of the trust property itself or the evidence thereof, and no rule applicable to all trusts requiring notice to and acceptance by the cestuis, still where the alleged trust is an informal or voluntary one, as in the present case, "the law of this Commonwealth requires notice to the cestui or to some person in his behalf, and at least implied acceptance by the cestui, in order to perfect the creation of the trust." *O'Hara* v. *O'Hara*, 291 Mass. 75, 78, and cases cited.

Applying these principles to the facts found by the master and the reasonable inferences which may be drawn therefrom in the present case, we think that the proper conclusion is that Miss Conway established a valid trust of the deposit in question, under the terms of which she was to have the sole control of the deposit, both as to principal and income, during her life, whatever remained upon her death to go to the defendant. While the notation on the ledger card, which has been already referred to, would not be sufficient to pass title to the deposit after her death to the defendant, or to constitute notice to him or someone in his behalf of her intention to give him an equitable interest therein, *Hogarth-Swann* v. *Steele*, 294 Mass. 396, 398, here there was more than that from which to find an intention on her part to give him an equitable interest in the deposit — notice to

him and at least implied acceptance by him. From November, 1933, he was in possession of the book of deposit which stated on its face that the deposit represented stood in the name of Miss Conway in trust for him. It is established by the report that she intended to retain control of the deposit, that she alone could make withdrawals therefrom, and that she intended that upon her death the deposit should be payable to the defendant. The rational inference from these findings is that those purposes were disclosed to the defendant, and we think that his acceptance of the trust could be implied properly. The reservation by Miss Conway of control of the account and of the unlimited power to make withdrawals therefrom, which if exercised in full would operate to work in effect a revocation of the trust, is not inconsistent with a present valid trust. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309. *Buteau* v. *Lavalle,* 284 Mass. 276, 278, 279, and cases cited. *O'Hara* v. *O'Hara,* 291 Mass. 75, 78.

Since Miss Conway is not now competent to hold and manage the trust fund, a trustee should be appointed in her place. Having acquired jurisdiction properly equity may make complete disposition with respect to the rights of the parties "within the pleadings connected with the principal controversy." *Glazer* v. *Schwartz,* 276 Mass. 54, 58. *Shadman* v. *O'Brien,* 278 Mass. 579, 584.

The suit should have been brought properly in the name of the ward, instead of in that of her guardian, who, however, could represent her. G. L. (Ter. Ed.) c. 201, § 37. This is a purely formal difficulty, and may be cured by amendment. *Chase* v. *Faulkner,* 307 Mass. 404, 407.

If within sixty days after rescript the Superior Court shall have allowed an amendment substituting the ward as party plaintiff, then, instead of the final decree appealed from, a decree is to be entered appointing a trustee under the trust created by her, in her place, to hold the deposit in trust for her uses both as to principal and income during her life, or until it shall have been exhausted, prior to her death, by such uses, and upon her death to pay to the defendant any balance of the trust fund that may remain after deduction of proper charges; and further, directing the defendant to

deliver to the trustee appointed the book of deposit in question, and ordering the defendant bank upon presentation of the book of deposit by the trustee appointed to transfer the deposit upon its books into his name as trustee for the purposes hereinbefore set forth. If such amendment is not allowed the bill is to be dismissed.

*Ordered accordingly.*