ESTATE OF EVA WASSERMAN, DECEASED, NATHAN A. WASSERMAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106184. Promulgated May 12, 1942.

*Frank J. Maguire, Esq.,* for the petitioner.
*Davis Haskin, Esq.,* for the respondent.

OPINION.

SMITH: The principal question for our determination in this proceeding is whether the amounts standing in the above described bank accounts which decedent established for the benefit of her husband and children are includable in the value of her gross estate for estate tax purposes. The respondent has determined that they are, on the grounds, first, that there was no completed conveyance of the accounts by the decedent during her lifetime, and that if there was they were trust conveyances made in contemplation of death, or to take effect in use and enjoyment at or after death. Respondent further contends that the trusts, if such they were, were revocable and for that reason includable in the gross estate.

On the evidence of record we find little difficulty in agreeing with the respondent that there were no completed *inter vivos* gifts by the decedent of any of the funds in the accounts in question during her lifetime. It is essential to the validity of such gifts that the donor not only have a manifest intention to make the gift but that the subject matter of the gift, or something symbolic thereof, be delivered to the donee, or some one acting for the donee, so that it is put definitely and irrevocably beyond the ownership and control of the donor.

It is clear that the decedent did not divest herself of either the ownership or control of any of the accounts. She merely deposited the funds in her own name as "trustee" for the children or her husband without releasing any of her control over them. There is no evidence of any agreement between the decedent and the banks where she made the deposits which would have authorized any one other than herself to withdraw any of the funds at any time. In *Hogarth-Swann* v. *Steele* (1936), 294 Mass. 396; 2 N. E. (2d) 446, it was said that:

It is settled in this commonwealth that the mere fact that a person puts money belonging to him in a savings bank account in his name as trustee for another does not create a valid trust. *Brabrook* v. *Boston Five Cents Savings Bank*, 104 Mass. 228, 6 Am. Rep. 222; *Robertson* v. *Parker*, 287 Mass. 351, 355, 191 N. E. 645, and cases cited. "Unless there is something more than the words that one is trustee for another, to show that a present creation of an equitable interest is intended and that the settlor has ceased to have full dominion, the nominal cestui has no rights." *Murray* v. *O'Hara* (Mass.) 195 N. E. 909, 911. The facts in the present case do not show such an intention or relinquishment of full dominion over the deposit.

However, in *Scanzo* v. *Morano*, 284 Mass. 188; 187 N. E. 552, the court determined that where a wife deposited in a savings account the earnings of herself, her husband, and her son, as trustee for the son, and handed the bank book to the son, who returned it to her so that she could get the interest on the account, there was a valid trust

**1136**

created for the son. See *McCaffrey* v. *North Adams Savings Bank*, 244 Mass. 396; 138 N. E. 393; *Supple* v. *Norfolk Savings Bank for Seamen*, 198 Mass. 393; 84 N. E. 432; *Mulloy* v. *Charlestown Five Cents Savings Bank*, 285 Mass. 101; 188 N. E. 608; *Robertson* v. *Parker*, 287 Mass. 351; 191 N. E. 645; and *Buteau* v. *Lavalle*, 284 Mass. 276; 187 N. E. 628.

A full discussion of this question is found in *Eschen* v. *Steers* (C. C. A., 8th Cir.), 10 Fed. (2d) 739, where it was held that there was no gift or trust where the intended donor wrote a letter to the bank directing the transfer of funds to another's account.

The most recent case from the Massachusetts courts to come to our attention is *Greeley* v. *Flynn*, 310 Mass. 23; 36 N. E. (2d) 394 (Sept. 10, 1941). The facts in that case bear a close resemblance in many important respects to those in the instant case. The donor deposited funds in a savings account in her own name as "trustee" for her nephew, telling the nephew that she had given him the account and giving him possession of the account book, and from time to time, at his request, withdrawing funds from the account for him. It was held that there was no completed *inter vivos* gift, but that a valid trust was created for the nephew. In its opinion the court said:

In the case at bar the only findings of the master bearing on the question of delivery of the book with the intention of making a gift thereof are that in November, 1933, Miss Conway gave the book to the defendant's mother who in turn gave it to him; that Miss Conway intended to retain control of the account and that "she alone controlled the account and she alone could make withdrawals"; that subsequent withdrawals were made by her and the sums withdrawn given by her to the defendant; and that she intended that the account should become payable to the defendant upon her death. It seems obvious that these findings of the master would not warrant a finding by the judge that there was any delivery of the book by Miss Conway to the defendant or to anyone for him, with an intent on her part to pass title and thus transfer ownership to him.

While in the circumstances here present there may be some question as to whether the accounts which petitioner set up in the various banks were valid trusts for the benefit of the husband and children, there is little doubt that under the authoritative cases they were not completed *inter vivos* gifts. *Greeley* v. *Flynn, supra*. The funds so deposited were decedent's own funds. In depositing them as "trustee" she dispossessed herself of no interest whatever in the funds. Although the bank books were left in possession of the alleged donees for a short time, these bank books themselves carried no rights of possession or enjoyment of the funds. They could be reached only by the decedent in person. There is no indication that the banks would have complied with the request of any of the beneficiaries for the payment to them of either the interest or principal of any of the accounts. In fact the evidence is that they would

not have and that all withdrawals had to be made by the decedent in person.

Substantial withdrawals were made by the decedent from all of the accounts from time to time. While the testimony of petitioner's witnesses was that the withdrawals, or most of them, were made with the consent of the beneficiaries themselves, their consent was not necessary. At least one withdrawal was made without the beneficiary's consent when $4,000 was withdrawn from Jeannette's account when she was only 11 years old and loaned or given to the decedent's brother for use in his business. The business went into bankruptcy in the same year and the funds were lost.

But even if the accounts were validly created trusts, we think that they were transfers intended to take effect in possession and enjoyment at or after death within the meaning of section 302 (c) of the 1926 Act, as amended. This conclusion seems inescapable in view of the established facts that the decedent intended to and did retain complete and unlimited control over the funds, not just as a fiduciary but to the detriment of at least one beneficiary. The evidence shows beyond much doubt that it was not the decedent's intention that any beneficial interest in the funds should vest irrevocably in the beneficiaries until after her death. It is significant that in the first paragraph of her will decedent bequeathed to each of the beneficiaries the balance then standing in their respective accounts. This clause was put in the will at the suggestion of decedent's attorney. The provision would have been unnecessary, however, if the accounts had been previously conveyed to the beneficiaries either as *inter vivos* gifts or trusts.

We think, too, that the trusts, if such they were, were revocable trusts, as the respondent further contends. See *Greeley* v. *Flynn*, *supra*. The decedent had the unrestricted right to withdraw the funds and thus destroy the trusts.

There is some evidence to support the respondent's further determination that the transfers which the decedent made to the accounts in 1936 and 1937 were made in contemplation of death, but we do not need to pass upon this question.

As to the remaining issues, the respondent concedes that petitioner is entitled to a deduction of $1,674.08 in addition to that already allowed on account of administration expenses, including the fee of the attorney representing petitioner in this proceeding.

It is alleged in the amended petition that the respondent further erred "in failing to allow credit for estate taxes due the Commonwealth of Massachusetts." Counsel for the petitioner stated at the hearing:

* * * The estate will be liable for Massachusetts taxes which have not been paid and the Petitioner claims an allowance should be made for those, that, of course is a saving of his right to the credit.

Credit for the Massachusetts estate tax actually paid will be allowed as provided in section 813, Internal Revenue Code.

It is further alleged in the amended petition that the respondent erred in including in the gross estate the amount of $4,206.91 representing income of the estate for the period from the date of decedent's death to the optional valuation date one year later. It is stipulated that of the amount of $4,206.91, $1,696.26 represented interest credited to the above 25 accounts after the date of decedent's death. A portion of that amount, $451.96, had accrued on February 21, 1937, the date of decedent's death. A further portion of the $4,206.91, '$2,530.77, represented income from real estate, stocks, bonds, and notes received between February 21, 1937, and February 21, 1938. The executor included this latter amount in the value of the gross estate in the estate tax return.

Respondent concedes in his brief that his determination of the deficiency herein with respect to "interim income" is not in accordance with *Maass* v. *Higgins*, 312 U. S. 443, or article 11 of Regulations 80 as amended by Treasury Decision 5047. Respondent further states in his brief that the stipulation of facts will provide the basis for a final adjustment of this issue under Rule 50.

*Decision will be entered under Rule 50.*