EILEEN HARRINGTON *vs.* JOHN R. DONLIN.

Middlesex.    November 5, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Trust,* Express trust: what constitutes, parol trust, of personal property *Gift.*

Evidence in a suit in equity of the circumstances in which a savings bank account was set up in the name of the plaintiff's uncle as trustee for him, that the book later was delivered by the uncle to the plaintiff shortly before the uncle's death, and of statements by the uncle to the plaintiff at the time of delivery, warranted a finding either that the uncle had made a gift of the deposit to the plaintiff or that he had established an oral trust of it for the plaintiff's benefit.

A finding of laches on the part of the plaintiff in a suit in equity for the amount of a savings bank account was not required by evidence of the circumstances attendant upon a delay of two years after the plaintiff became of age in bringing the suit coincidentally with a disaffirmance of delivery to the defendant of the bank book and of an order for withdrawal of the funds.

BILL IN EQUITY, filed in the Superior Court on October 24, 1940.

The suit was heard by *Good,* J.

*J. J. Bush,* (*G. B. Redding* with him,) for the defendant.
*J. A. Daly,* (*J. D. McCarthy* with him,) for the plaintiff.

Cox, J. When one Timothy Donlin, hereinafter referred to as Donlin, died in March, 1936, there was a deposit in the Medford Savings Bank standing in his name, as trustee for the plaintiff, who, in her bill in equity, seeks to have it determined that at the time of Donlin's death she was the owner of this deposit, or, in the alternative, that at that time he held the deposit as trustee for her benefit. The evidence is reported.

The trial judge found the facts "to be as set forth in the bill of complaint" and that the plaintiff was not guilty of laches. The defendant appealed from the final decree adjudging that the plaintiff, at the time of Donlin's death, was the owner of the "bank book" in question, that the defendant was indebted to the plaintiff for the amount of the proceeds of the book which he had collected, together with interest, and ordering the defendant to pay the same to the plaintiff.

On this record such decree should be entered as justice requires. *White Tower Management Corp.* v. *Taglino,* 302 Mass. 453, 456. *Adams* v. *Adams,* 308 Mass. 584, 586, and cases cited.

Donlin and his wife "brought up" the plaintiff, whose mother, a sister of Mrs. Donlin, died in 1917 when the plaintiff was about three months old. The Donlins had a son, the defendant, who was living at home when the plaintiff came there and was then nineteen years old. About this time he went to sea, but seems to have made his home with his parents between voyages, and seems to have been at home from 1922 to 1923. In 1924 he was married. His only brother died in 1926. His mother died in 1931, and, about a year thereafter, the defendant and his wife came home to live. Donlin, the plaintiff's uncle, was very fond of her, and the relationship between the plaintiff and the defendant, at least until some time in 1940, appears to have been close and affectionate, in fact, the defendant testified that he loved her and that "basically . . . she has always been my sister." The plaintiff was "a little bit shy" and always very sensitive "as a little kid." From 1931 to 1936, she had to get about on crutches. Donlin was very secre-

tive. He never told the defendant of any bank book, stocks or bonds that he owned, in fact, the defendant testified that his father gave him the "opposite impression."

When Mrs. Donlin died in 1931, she had a deposit in the Medford Savings Bank in her name, as trustee for Eileen Harrington. The initial and only deposit of $50 was made on September 27, 1927. This account was closed on May 15, 1931, after her death, when it amounted to $56.77, by transfer to Timothy Donlin, trustee for Eileen Harrington. At the time of her death Mrs. Donlin also had an account in the same bank that was closed on May 15, 1931, when it amounted to $4,469.58. Donlin, on that day, deposited $1,000 from this account, apparently by transfer, to his account as trustee for Eileen Harrington, and, at the same time, by transfer from this same account, he opened a new account for $3,469.58. On January 8, 1934, by Donlin's direction, his account as trustee for Eileen Harrington was transferred to him as trustee for Eileen Donlin, and on that day he deposited $3,000 to this account. No question is raised that the plaintiff was not therein designated as Eileen Donlin. At that time Donlin had an account in that bank in his own name amounting to over $4,000, and the bank could not receive deposits of more than that amount in any single account. (See G. L. [Ter. Ed.] c. 168, § 31.) It would seem from the record, however, that when the deposit of $3,000 was made, the total deposit in the "trustee" account amounted to $4,056.77. On January 18, 1936, $56.77 was withdrawn from this account, leaving the total amount of deposits at $4,000.

About one and one half or two years before Donlin died, he showed the plaintiff the bank book that stood in his name as trustee for her, and told her that he wanted to leave her well provided for in case he should die. She told him that she was very grateful. He showed the book to her at different times. The plaintiff testified that when she was first shown the bank book by her uncle, they were in one of the upper bedrooms in the house, and that he told her he wanted her well looked after after his death and that "he was leaving this money"; that he wanted her to

be protected after his death; that he wanted her well cared for after he died; that he wanted her to have the money after he died; that he wanted her to be well cared for; that at other times he told her that he wanted her to have the money after he died and wanted her to be cared for; and that he did not say anything about using the money himself during his lifetime. Shortly before Donlin died, and on the day he "took to his bed," he handed the bank book in question to the plaintiff and told her to hide it. He died four days thereafter. The plaintiff also testified that her uncle had given her two books, one of which was the book in question, and told her to hide them.

There was testimony from another witness that during Donlin's last illness she called at the house and went upstairs to see him. The plaintiff was there, and when the witness entered the room, Donlin had a bank book in his hand and the plaintiff had one. Donlin "hid" his under the mattress, and the plaintiff put the one she had under her apron. Two or three weeks after Donlin died, the defendant having learned that there were other bank books in addition to those that had already been found, the plaintiff handed him the two bank books. He told her that he was the only one who could draw the money, as he was the administrator. There was other conversation at the time about using the money for the plaintiff's benefit, or for "our benefit." The total amount of the deposit in question was withdrawn while the plaintiff was a minor upon her order signed as Eileen Donlin and that of the defendant as administrator.

The plaintiff continued to live in the household of the defendant and his wife for about two years and one half. In August, 1940, she asked the defendant how she "stood about the money his father left . . . [her]," and he replied that he thought he had explained that several times to her and said that it could be taken as a gift or "any way at all, but morally it was his, because he was his son," and that she "didn't have much claim on it." The bill was filed on October 24, 1940.

The question whether a trust is created where the owner

of personalty puts the apparent title in his own name as trustee for another who furnishes no consideration was considered in *O'Hara* v. *O'Hara*, 291 Mass. 75, 77–78, with abundant citation of cases. See *Greeley* v. *Flynn*, 310 Mass. 23, 26–27. It is unnecessary to traverse the ground again. The law is well settled as to what constitutes an oral gift of a savings bank book. *Busteed* v. *Cambridge Savings Bank*, 306 Mass. 9, 15. *Gowell* v. *Twitchell*, 306 Mass. 482, 487. *Dorchester Savings Bank* v. *Tate*, 308 Mass. 436, 437, 438. *Greeley* v. *Flynn*, 310 Mass. 23, 26. See *Rock* v. *Rock*, 309 Mass. 44, 48. Whether a valid oral trust was created or there was a gift in the case at bar, the plaintiff is entitled to the amount represented by the deposit in question. See *Martin* v. *Meles*, 179 Mass. 114, 118. We are of opinion that either a trust or a gift could have been found. No particular form of words is required to make a party a trustee for the benefit of another. It is enough if it is unequivocally declared orally, if the property be personal, that it is held in trust for the person named, where, as here, the beneficiary had notice of the trust. *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159, 161. Many cases have been decided upon the precise language used by the settlor at the time the trust was declared, and it is always important to determine whether a trust has been created, or whether the transaction amounts to nothing more than an attempt to make a testamentary disposition.

In every case involving the alleged creation of an oral trust, it is vitally important to determine whether a present creation of an equitable interest is intended. We think a finding of the existence of this intention was warranted upon the evidence in the case at bar. See *Gerrish* v. *New Bedford Institution for Savings*, 128 Mass. 159, 163–164; *Buteau* v. *Lavalle*, 284 Mass. 276, 278. Compare *Robertson* v. *Parker*, 287 Mass. 351. The defendant contends that the manner in which the alleged trust fund was created shows that Donlin's purpose was merely to avoid the effect of the law that prevented the savings bank from receiving a deposit of more than $4,000 in any one account. But it is to be borne in mind that his wife had an account in her name

as trustee for the plaintiff, and that his first step in establishing the trust fund was to transfer this account to one in his name as trustee for the plaintiff shortly after his wife's death. Did he think at that time that the plaintiff was entitled to this small deposit? No one knows. On the same day he caused $1,000 to be deposited in this new "trustee" account by transfer from one of Mrs. Donlin's accounts. It is true that at that time Mrs. Donlin's account amounted to more than $4,000. It does not appear from the record whether the excess over $4,000 in this account amounted to interest and nothing more. Evidence that a person has deposited in a savings bank the full amount allowed to his own use is admissible as offering a possible explanation of a deposit by him in his own name, ostensibly as trustee for others. *Parkman* v. *Suffolk Savings Bank*, 151 Mass. 218, 219–220. In the case at bar, however, there is no evidence that on May 15, 1931, when Donlin made the transfer from his wife's account, it was necessary for him to deposit $1,000 in the new account as trustee for the plaintiff, inasmuch as the total amount of Mrs. Donlin's deposit was only $4,-469.58. It is assumed, of course, that the bank intended to comply with the law. Nevertheless, when, on January 8, 1934, it accepted a deposit of $3,000 on Donlin's account as trustee for the plaintiff, the total amount of that deposit, exclusive of interest, then stood at $4,056.77. It well may be that the reason for the withdrawal of $56.77 on January 18, 1936, was for the purpose of belatedly complying with the law. What became of this small withdrawal does not appear, but, in the circumstances of the case, as presented by the record, we prefer to regard it as an attempt to comply with the law, rather than as indicating a dominion on the part of Donlin over the principal fund that he had attempted to make the subject matter of a trust.

The evidence warrants the finding that Donlin gave the bank book in question to the plaintiff four days before his death and told her to hide it, and that he did not speak to her about the book thereafter. Up to that time, we think that there was nothing to show any intent of Donlin to make a present gift, as distinguished from an intent to create a

trust. If a valid trust had been created, there was no reservation of any right to revoke or alter it. See *Rock* v. *Rock*, 309 Mass. 44, 48. The delivery of the bank book to the plaintiff, in the circumstances, was some evidence that a trust had been created. It also was some evidence of an intention on the part of Donlin to make a present gift. In and of itself, however, it would not be enough to transfer ownership of the deposit. See *Greeley* v. *Flynn*, 310 Mass. 23, 26. If, however, we take into consideration, as we must, the warrantable findings as to what Donlin said to the plaintiff at other times, we are of opinion that a completed gift could be found. It is true that the direction to the plaintiff to hide the book, standing alone, would not be enough to show an intended gift, but the other circumstances of the case must be taken into consideration in determining the legal significance of the delivery of the bank book to the plaintiff.

Although we are of opinion that the evidence warrants the conclusion that either a trust was established or there was a gift of the deposit, we incline to the view that a trust was established.

When the plaintiff signed the order with the defendant for the withdrawal of the deposit in question, she was a minor. The defendant has pleaded laches. It is unnecessary to recite the evidence bearing upon the plaintiff's disaffirmance of her act in signing the withdrawal order, or that which the defendant contends shows laches. It is enough to say that we have examined it and are of opinion that the plaintiff was within her rights in disaffirming, and that the defendant has failed to sustain the burden of proving laches.

*Decree affirmed.*