## WASSERMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3903.

Circuit Court of Appeals, First Circuit.

Jan. 7, 1944.

Revenue, both of Washington, D. C., of counsel), for Commissioner of Internal Revenue.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is a petition by the executor of the estate of Eva Wasserman for review of that part of a decision of the United States Board of Tax Appeals, now the Tax Court of the United States, which sustained the Commissioner's determination that certain savings bank deposits made by the decedent during her lifetime should have been included in her gross estate for estate tax purposes.[1]

The decedent, a resident of Brookline, Massachusetts, died on February 27, 1937, leaving a husband and seven children surviving. During the period from February 7, 1921, to January 7, 1937, she made twenty-five deposits in various local savings institutions which, with accrued interest, totaled $78,463.77 on the date elected by the executor for valuing the gross estate. All of the deposits were made by the decedent out of her own money and each one stood in her name "as trustee for" either her husband or some one of her children as a named beneficiary.

The Board of Tax Appeals found that the decedent had informed each of the beneficiaries of the existence of the accounts in which their names appeared, and that on various occasions she had given to each one possession of the savings bank books in which his or her name appeared, but that the beneficiaries had kept possession of their books for only brief periods of time, in every instance returning them to the decedent for safe keeping. It found that "The decedent alone had access to the accounts and had absolute control over them", and that "Withdrawals could be

Frank J. Maguire, of Buffalo, N. Y. (Albrecht, Maguire & Mills, of Buffalo, N. Y., of counsel), for petitioner for review.

Homer R. Miller, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and Norman S. Altman, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, and Ralph F. Staubly, Sp. Atty., Bureau of Internal

[1] The applicable statute is the Revenue Act of 1926, § 302(a), (c) and (d), as amended, 26 U.S.C.A. Int.Rev.Code, § 811 (a, c, d), which on the appropriate date read:

"Section 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *

"(a) To the extent of the interest therein of the decedent at the time of his death;

* * * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * by the decedent alone or by the decedent in conjunction with any other person * * * to * * * revoke, or terminate * * *."

made only upon her demand and upon presentation of the account books". And it found that the decedent had exercised her power of withdrawal several times. It found that on two occasions she had exercised it with the beneficiary's consent, once to obtain funds to apply as part payment for a family burial ground, and at another time to defray the cost of a wedding for one of the children. But it also found that "At least one withdrawal was made without the beneficiary's consent when $4,000 was withdrawn from Jeanette's account when she was only 11 years old and loaned or given to the decedent's brother for use in his business." The Board also found that unexplained withdrawals aggregating $5,640 had been made over the period from November, 1934, to February, 1936, from her husband's account and that from 1925 to 1934 other unexplained withdrawals had been made from some of the other accounts.

On the basis of these facts the Board concluded that the decedent had not made completed, outright inter vivos gifts of the deposits to her husband and children; that although under the law of Massachusetts there was some question whether the decedent had made valid gifts of the deposits in trust for the beneficiaries, still even if she had, the transfers were intended to take effect in possession and enjoyment at or after her death within the meaning of § 302 (c) supra; and that, in consequence of the foregoing, there was no need to decide whether any of the transfers had been made in contemplation of death. We think the Board's conclusions are sound and should be affirmed.

■ In Massachusetts it appears to be well settled that an oral gift of a savings bank book accompanied by actual delivery thereof to the donee with intent to pass title, and acceptance by the donee, will transfer ownership. But when a savings account stands in the name of the donor as trustee for the donee, so that the donor alone controls the account and he alone can make withdrawals, it cannot be found that a mere delivery of the pass book evidencing the account to the donee was made with an intent on the donor's part to pass title to the donee and thus transfer ownership to him. This was clearly established by the Supreme Judicial Court of Massachusetts in 1941 in the case of Greeley v.

Flynn, 310 Mass. 23, 36 N.E.2d 394. Thus on the undisputed findings the Board was clearly correct in concluding that under Massachusetts law the decedent had not made outright inter vivos gifts to the beneficiaries.

The question next arises whether in opening the accounts the decedent made inter vivos gifts in trust to the beneficiaries.

■ In Hogarth-Swann v. Steele, 294 Mass. 396, 397, 2 N.E.2d 446, 447, decided in 1936, the Supreme Judicial Court of Massachusetts said: "It is settled in this commonwealth that the mere fact that a person puts money belonging to him in a savings bank account in his name as trustee for another does not create a valid trust. Brabrook v. Boston Five Cents Savings Bank, 104 Mass. 228, 6 Am.Rep. 222; Robertson v. Parker, 287 Mass. 351, 355, [357], 191 N.E. 645, and cases cited. 'Unless there is something more than the words that one is trustee for another, to show that a present creation of an equitable interest is intended and that the settlor has ceased to have full dominion, the nominal cestui has no rights.' O'Hara v. O'Hara, [291 Mass. 75, 77], 195 N.E. 909, 911." And the minimum "something more" required by the law of Massachusetts to perfect the creation of a trust of savings accounts like the ones before us is notice to the cestui, or to some person in his behalf, and at least implied acceptance by the cestui. O'Hara v. O'Hara, 291 Mass. 75, 195 N.E. 909; Scanzo v. Morano, 284 Mass. 188, 187 N.E. 552; Greeley v. Flynn, supra. Here there was notice to the cestuis and we may safely assume that they were willing to accept. Thus it would appear that under Massachusetts law valid trusts were created.

But to establish the taxpayer's case he must not only show the creation of valid trusts,[2] but he must also show that the beneficiaries' possession or enjoyment of those trusts was not intended by the settlor to be postponed until at or after her death and that she did not intend them to be revocable. Since the decedent did not express her intentions in a declaration of trust, we must look to her actions to determine her intentions with respect to the deposits.

■ If we assume that the beneficiaries derived some benefit from the purchase of a family burial lot and from an expensive

---

[2] Since the decedent did not make outright gifts, if she did not create any trusts at all the amounts on deposit would clearly be includible in her gross estate under § 302(a), supra.

wedding for one of their number, the withdrawals made for those purposes give some indication that the decedent intended her beneficiaries to have present possession and enjoyment of the accounts. But these were not the only withdrawals. There were several unexplained ones, and there was the withdrawal of $4,000 from the account of one minor beneficiary which the decedent made without that beneficiary's knowledge .and consent for the purpose of putting her brother in funds for use in his business. These withdrawals, particularly the latter, seem pretty clearly to indicate that the decedent intended to retain as long as she lived the right to use the funds on deposit in any way that she wished, thereby giving to the beneficiaries only so much as might remain in the accounts upon her death, and thus postponing their rights of possession and enjoyment until that time. At least these withdrawals afford a rational basis for the conclusion reached by the Board and this is enough to put that conclusion beyond our reach even if we should be disposed to question it. Dobson v. Commissioner, 64 S.Ct. 239, decided December 20, 1943, and cases cited.

In view of what we have said we need not consider whether the trusts, if trusts they are, are also revocable (see Greeley v. Flynn, supra) and so that the sums on deposit should be included in the decedent's gross estate under § 302(d).

The decision of the Board of Tax Appeals is affirmed.