Ruth Sawyer **EICHSTEDT** (formerly Ruth Sawyer) executrix, Estate of Cecil Sawyer, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

**No. 69–410.**

United States District Court,
N. D. California.

Oct. 5, 1972.

Gino P. Cecchi, San Francisco, Cal., for plaintiff.

Asst. U. S. Atty. Gary K. Shelton, San Francisco, Cal., for defendant.

SWEIGERT, District Judge.

This is an action brought by Ruth Sawyer, as the Executrix of the Estate of Cecil L. Sawyer, for the refund of $36,872.53 in estate taxes.

The record consists of a Stipulation and Order containing an Agreed Statement of Facts (with attached exhibits) filed herein on October 8, 1971, and the deposition of Wagner d'Alessio, also on file with the Court.

The first question presented is whether the value of decedent's community one-half interest in the securities, held by him as custodian for his children under the California Gifts of Securities to Minors Act, and the savings accounts maintained in his name as trustee for his children are includible in the decedent's gross estate.

There is a second issue presented in this case, i. e., whether the value of decedent's community one-half of certain commissions payable after his death pursuant to a certain 1960 agreement was includible in his gross estate. This subject will be separately considered hereinafter.

THE SECURITIES

The agreed facts pertaining to this issue are substantially that the decedent, who died on January 20, 1965, was survived by his two children, Marcia Sawyer and Constance Sawyer Perkins, both of whom were born on September 1, 1945. Commencing in 1956, the decedent periodically acquired certain securities, purchased with community funds of himself and wife, as custodian for Marcia and Constance, registering them respectively in the name of "Cecil L. Sawyer As Custodian for Miss Marcia J.

Sawyer Under The California Gifts Of Securities To Minors Act" and "Cecil L. Sawyer as Custodian For Miss Constance A. Sawyer Under The California Gifts Of Securities To Minors Act."

Shortly after he began acquiring the above-mentioned securities, the decedent established two savings accounts with the American Trust Company (now Wells Fargo Bank) in San Francisco, California—one in the name of "Cecil L. Sawyer, Trustee for Marcia J. Sawyer, a minor" and another in the name of "Cicil L. Sawyer, Trustee for Contance A. Sawyer, a minor." The terms of the agreements governing these two accounts were identical and during his lifetime the decedent had the sole and unrestricted power to withdraw the funds.[1]

The decedent, retaining the passbooks, deposited all dividends and income from the securities he held as custodian for his daughters in the respective savings accounts.

None of the above-mentioned securities or either of the savings accounts were included in the gross estate of decedent on the Estate Tax Return and the Internal Revenue Service assessed an estate tax deficiency.

The government contends that these securities and bank accounts are includible under the provisions of both Section 2036 and Section 2038 of the Internal Revenue Code of 1954.

Section 2036(a)(1) provides that the value of all property which has been transferred by a decedent for less than a full and adequate consideration is includible in his gross estate if the decedent retained the "possession or enjoyment of or the right to income from, the [transferred] property." The decedent will be considered to have retained the "possession or enjoyment of or the right to income from, the [transferred] property" if the decedent has retained the right to have the transferred property or the income therefrom applied toward the discharge of his legal obligation to support a dependent. Helvering v. Mercantile Bank & Trust Co., 111 F.2d 224 (C.A. 8 1940), cert. den. 310 U.S. 654, 60 S.Ct. 1104, 84 L.Ed. 1418 (1940); Treasury Regulations on Estate Tax, Section 20.2036–1(b)(2)).

The California Gifts of Securities to Minors Act (former California Civil Code §§ 1154–1164) (sometimes referred to as the "Model Act") and its successor Act of 1959, the so-called Uniform Gifts to Minors Act (present California Civil Code §§ 1154–1165), which govern the status of the securities in question, are virtually identical and differ in no respect material to this case. (See Rev. Rul. 59–357, 59–2 Cum.Bulletin 212).

Under these acts, decedent had the following powers as custodian of the securities:

The custodian shall pay over to the minor for expenditure by him, or expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable *for the support, maintenance, education and benefit* of the minor in the manner, at the time or times, and to the extent that the custodian in his discretion deems suitable and proper, with or without court order, *with or without regard to the duty of himself or of any other person to support the minor or his ability to do so,* and with or without regard to any other income or property of the minor which may be

[1]. Specifically, it was agreed as to both accounts: That the money now deposited and all moneys which shall at any time be deposited in this account . . . with said American Trust Company is and will be so deposited by [the decedent], and is to, and will be received and held by it, with the understanding and upon the condition that the same and all dividends or interest thereon, and all accumulations thereof, are payable to, and shall be payable to, and shall be collected by [the decedent] during [his] lifetime, and upon [his] death the then balance in said account, if any there be, shall be payable to the above named beneficiary [Marcia or Constance], his or her heirs, executors, administrators or assigns . . . . .

applicable or available for any such purpose. (emphasis added) (Uniform Gifts to Minors Act—Cal.Civil Code § 1158(b)).

■ The courts have held that property transferred by a decedent to himself as custodian under the Uniform Gifts to Minors Act (or the virtually identical Model Gifts of Securities to Minors Act), is includible in the decedent's gross estate under Section 2036(a)(1) of the Code. Estate of Prudowsky v. Commissioner, 55 T.C. 890 (1971), judgment affirmed, 465 F.2d 62 (7th Cir. 1972); Estate of Chrysler v. Commissioner, 44 T.C. 55 (1965), rev'd on other grounds 361 F.2d 508 (C.A.2 1966). The basis of the decisions in *Estate of Prudowsky* and *Estate of Chrysler* is that the decedent retains the right to apply the transferred property and the income therefrom to the discharge of his legal obligations to support his children.

Plaintiff, apparently recognizing the principle that such property is ordinarily includible in a decedent's gross estate where the decedent has retained the right to use the property or its income to discharge a legal obligation of support, contends that this principle is not applicable to securities held in custodianship for decedent's daughter, Constance, because, although she was under the age of twenty-one at decedent's death, she was married and decedent no longer owed her an obligation of support.

California Civil Code, Section 25, provides that, although minors are all persons under 21 years of age, a minor, upon marriage, "[shall] be of the age of majority for all purposes of the Civil Code." Re Jacobson, 30 Cal.2d 326, 182 P.2d 545, holds that marriage terminates guardianship; Wilkins v. Wilkins, 95 Cal.App.2d 605, 213 P.2d 748 (1950) holds that the parents' obligation to support is terminated upon the child reaching majority; Kamper v. Waldon, 17 Cal.2d 718, 112 P.2d 1 (1941) holds that the parents' support obligation is re-

leased upon the emancipation of the child by its lawful marriage.

Defendant counters that these cases were decided before 1955 when California adopted the Uniform Civil Liability for Support Act (Civ.Code §§ 241–254) which, after defining "child" for the purposes of that Act (Sec. 241), as "a son or daughter under the age of 21 years," goes on to provide (Sec. 242) that "every man shall support . . . his child . . . subject to the provisions of §§ 175, 196 and 206 of the Civil Code," none of which sections make any qualification concerning the marriage of the child.

Similarly, the defendant points out that the California Uniform Gifts to Minors Act (Civil Code §§ 1154–1165), after providing (Sec. 1155) that a "minor" is a person who has not attained the age of 21 years, goes on to provide (Sec. 1158(d) ) that the custodian shall deliver over the custodial property to the minor "on his attaining the age of 21 years"—again without any qualification concerning the marriage of the minor.

It can be well argued that these latter provisions of the Civil Code, relied on by the defendant, must be read in the light of Civil Code Sec. 25 which clearly provides that, upon marriage, the "child" or the "minor" becomes "of the age of majority for all purposes of the Civil Code." In that interpretation of the statute it would follow that decedent's daughter, Constance, would be considered as if she was over the age of 21 for the purposes of Civil Code §§ 242 and 1158(d).

■ It is not necessary, however, to rest this case upon that point because in any event, as the government contends, the securities of *both* daughters are includible under Section 2038 which provides that custodial property shall be included in gross estate when at the time of death the enjoyment of the property was subject to change through decedent's exercise of a power to "alter, amend, revoke or terminate."

■ Section 2038 extends to property subject to a decedent's power to affect

"the time or manner of enjoyment of property or its income, even though the identity of the beneficiary is not affected" and even though the beneficiary may previously have had "vested" rights in the property. Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953); Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228 (1946); Treasury Regulations on Estate Tax, Section 20.2038-1(a) (26 C.F.R. Section 20.2038-1(a)).

The Uniform Gifts to Minors Act (or the nearly identical model Gifts of Securities to Minors Act) gives to the custodian the power to, in effect, terminate the custodial arrangement by exercising the broad power under § 1158(b) (and § 1158(a) of the former Act) of paying over to the beneficiary "so much or all" of the custodial property as the custodian deems advisable in his sole discretion.

The courts have held that under § 2038 property transferred by a decedent to himself as custodian under the Uniform Gifts to Minors Act, or the nearly identical Model Gifts of Securities to Minors Act, is includible in the decedent's gross estate. Stuit v. Commissioner, 452 F.2d 190 (C.A.7 1971) aff'g 54 T.C. 580 (1970); Estate of Prudowsky v. Commissioner, supra; Estate of Chrysler v. Commissioner, supra; Estate of Jacoby v. Commissioner, P-H Memo T.C. ¶ 70,165 (decided 6/22/70).

■ The basis of these decisions is that both the Uniform and Model Acts gave the custodians the power to terminate their custodial arrangement by exercising the power under the Acts to distribute the entire custodial property to the beneficiaries of the arrangement. It has been held that the decedent's retention of such a power over transferred property makes the transferred property includible in his gross estate under Section 2038 of the Code. Lober v. United States, supra; Commissioner v. Estate of Holmes, supra; Estate of Varian v. Commissioner, 47 T.C. 34 (1966) aff'd per curiam 396 F.2d 753 (C.A.9 1968)

cert. den. 393 U.S. 962, 89 S.Ct. 402, 21 L.Ed.2d 376 (1968).

■ It should also be noted that, apart from the right to use income for the support of the minors, the securities would be includible in gross estate under Section 2036(a)(1) for the additional reason that the income from the securities was deposited by decedent in the two savings accounts maintained in his name with the sole and unrestricted power to withdraw any or all thereof and retained possession of the passbooks at all times until his death. On similar facts it has been held that the value of the transferred securities becomes includible in gross estate under Section 2036(a)(1). Fitzsimmons v. United States, 222 F.Supp. 140 (E.D.Wash. 1963).

## THE SAVINGS ACCOUNTS DEPOSITS

■ So far as the deposits made in savings accounts are concerned, the source of the deposits in these accounts was the income from the securities decedent held as custodian under the California Uniform and Model Acts and all income from these custodial properties was deposited in these accounts. The decedent had the sole and unrestricted power to withdraw the funds from these accounts during his lifetime and possession of the bank passbooks was retained by the decedent at all times until his death.

As stated above, property transferred by a decedent is includible in his gross estate under Section 2036(a)(1) of the Code if the decedent retained the "possession or enjoyment of, or the right to the income from the [transferred] property." In the present case, the decedent retained possession of the passbooks for the trustee savings accounts until his death and retained the sole and unrestricted right to withdraw any or all of the funds deposited to these accounts. Thus, the value of the savings accounts is includible in decedent's gross estate under Section 2036(a)(1) of the Code

because the decedent could apply any or all of the deposited funds to discharge his obligation of support to his children. See Helvering v. Mercantile Bank & Trust Co., supra. Moreover, the value of the savings accounts would be includible in decedent's gross estate under Section 2036(a)(1) of the Code because the decedent could use any or all of the deposited funds directly for his own use. Clearly, the decedent retained the "possession," "enjoyment of" and "right to income" from the trustee savings accounts. See McNichol's Estate v. Commissioner, 265 F.2d 667 (C.A.3 1959) cert. den. 361 U.S. 829, 80 S.Ct. 78, 4 L. Ed.2d 71).

■ Further, property donatively transferred by a decedent is includible in his gross estate under Section 2038 of the Code if the enjoyment of the property was subject to change through the decedent's exercise of a power "to alter, amend, revoke or terminate." There is no question here that the decedent had the power to revoke and terminate the savings account trusts in question. Both the agreements with the bank and California law made the tentative trusts revocable at the will of the decedent, and he could end the trusts at any time by simply withdrawing the deposition funds. The existence of such a power over transferred property makes that property includible in decedent's gross estate under Section 2038 of the Code. See Lober v. United States, supra; Commissioner v. Estate of Holmes, supra. See also Estate of Wasserman v. Commissioner, 139 F.2d 778 (1st Cir. 1944).

Plaintiff's only argument against the inclusion of the trustee savings accounts in decedent's gross estate appears to be the assertion that the decedent's daughters somehow were the owners of the accounts. (Plaintiff's Brief, pp. 14–15). This ignores the agreements governing the trustee accounts which specifically provide that during decedent's lifetime

he had the sole right to the deposited funds and that his children were entitled only to the balance, if any, remaining in the account at his death.

Plaintiff implies that, since the source of the deposits in the trust accounts was the income from the securities decedent held as custodian under the Uniform and Model Acts, that such income remained custodial property notwithstanding its deposit in the trustee accounts. See, California Civil Code Section 1155(e)(2). However, assuming this to be the case, the decedent would have the same powers over the trustee accounts as he had with respect to the securities, and the trustee accounts would be includible in his gross estate under §§ 2036(a)(1) and 2038 of the Code for the reasons already stated.

## THE COMMISSION ISSUE

■ The facts pertinent to this issue are that at the time of his death, January 20, 1965, decedent, then aged 55, was still actively employed by Index Underwriter Inc., and there was in effect an agreement between decedent and Index, dated January 1, 1960, whereunder, if decedent should retire at any time after reaching age 60, Index would pay him $10,000 a year for ten years; if decedent died before reaching age 60, then Index would pay his widow $10,000 per year for each year decedent had been employed by Index after January 1, 1960.[2]

At the time of his death there was also in effect another agreement between decedent and Index, dated December 30, 1960, under the terms of which decedent was to receive, so long as he was employed by Index and until age 65 or his sooner retirement (and decedent was actually receiving at the time of his death), renewal commissions on insurance he had placed during his employment. The agreement provided that in the event decedent died (as he did die) before retirement and prior to age 65, his widow was to receive for a period of

---

2. This sum was paid to the widow but the value of the payment was included in de-

cedent's gross estate and the item is not directly in issue in this case.

up to 3 years from decedent's death one half of the renewal commissions that decedent would have received under the December 30, 1960 agreement if he had lived.

The government contends that the value of decedent's community one-half interest in the one-half of the renewal commissions paid to the widow under the December 30, 1960 agreement, is includible in the decedent's gross estate under Title 26 U.S.C. § 2033 and also § 2039(a).

Section 2033 provides that decedent's gross estate shall include the value of property to the extent of decedent's interest in the property at the time of his death.

Plaintiff contends that in effect decedent's community one-half of the commissions payable to the wife was not includible in the estate under Section 2033 because decedent did not have a property interest in the said commissions at the time of his death.

It has been held that a decedent has an interest at the time of his death when at that time he had the legal right to receive and was actually receiving at that time monthly payments in distribution of the proceeds of an insurance policy provided under the agreement and that, where under the agreement his widow was entitled to continue to receive the monthly insurance payments, the value of the later payments was includible in decedent's estate under § 2033. Rosenberg v. United States, 309 F.2d 724 (CA7 1962).

It has been similarly held where at the time of his death decedent had an employment contract whereunder he was entitled to receive his regular annual salary for 15 years after his retirement from the company with a provision that if he died before receiving all the payments, his widow would receive the remaining payments. Goodman v. Granger, 243 F.2d 264 (3rd Cir. 1957).

It has been similarly held where a beneficiary of a deceased partner, or his estate, is entitled to receive partnership income after his death. Riegelman's Estate v. Commissioner, 253 F.2d 315 (2d Cir. 1958); Estate of Hull v. Commissioner, 38 T.C. 512 (1962).

We are satisfied that the decedent's community one-half interest in the one-half of the renewal commissions in question is includible in decedent's gross estate under § 2033.[3]

It is not necessary, however, to rest our decision on the application of Section 2033 because, as the government also contends, the value of the commissions in question is includible in decedent's estate in any event under the provisions of Internal Revenue Code § 2039(a),(b).

That section provides in substance and effect that a decedent's gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement (other than insurance on the life of the decedent), if under such contract or agreement an annuity or other payment was payable to the decedent or the decedent possessed the right to receive such annuity or payment for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—provided (sub. b) that subsection (a) applies only to such part of the annuity or other payment as is proportionate to that part of the purchase price of the contract or agreement contributed by the decedent, but any contribution by the decedent's employer shall be considered as having been contributed by the decedent if made by reason of employment.

---

3. Plaintiff's reliance on Dimock v. Corwin, 19 F.Supp. 56 (E.D.N.H.1937) is misplaced. In that case the Court held the decedent had no property interest at the time of his death because the contract there in question was by its terms subject to the employer's power to withdraw or modify it at any time prior to decedent's death. Here the December 30, 1960 agreement was not made revocable.

Section 2039, which has been implemented by 26 C.F.R. Sec. 20.2039, was enacted by the Congress in 1954 as a new provision intended to reach and to include in a decedent's gross estate for estate tax purposes the value of certain interests of a decedent which, although not traditionally such interests as would become part of his estate, passed to others at his death as something accumulated or created by or for the decedent, e. g., annuities or other payments payable by an employer to his employee, and on his death to a beneficiary, under employment contracts or agreements made in consideration of the decedent's services. (See Estate of Bahen, infra).

Plaintiff, contends that Section 2039(a), (b) is inapplicable because the renewal commissions, which decedent was receiving at the time of his death, were neither "an annuity or other payment . . . payable to the decedent" nor did the decedent possess "the right to receive (any) such annuity or payment" within the meaning of Section 2039(a), citing Estate of Fusz v. Commissioner, 46 T.C. 214 (1966), construing Section 2039(a) and holding it inapplicable where, upon the death of an employee, $200 a month became payable to his widow under an employment contract providing that in the event of the employee's death the company would pay that amount to the widow.[4]

The rationale of *Fusz* was that the phrase "annuity or *other payment*" is limited to *post employment benefits* which are paid to or would be payable to a decedent during his lifetime; that under the arrangement in that case neither the decedent nor anyone else (other than the widow) was receiving or was entitled to receive any such post employment benefits; that mere salary payments to the decedent did not constitute "an annuity or payment" paid or payable to the decedent.

The government attempts to distinguish *Fusz*, arguing that the renewal commissions which decedent was receiving at the time of his death, were not salary but were renewal commissions in addition to decedent's regular salary. It is arguable, however, that the commissions were merely additional compensation for services and, therefore, in the nature of mere salary. In any event, they could hardly be described as post employment payments in the nature of an annuity. The government cites no authority in support of its contention that those commissions which the decedent was receiving at the time of his death, could be considered standing alone, "an annuity or other payment" paid or payable to the decedent within the meaning of Section 2039(a) as construed by *Fusz*. We will assume, therefore, that, considered alone, receipt of those commissions by the decedent at the time of his death under the December 30, 1960 agreement, would be insufficient to bring the commissions within the terms of Section 2039(a), (b).

The government, however, does cite leading cases construing Section 2039(a), (b) and holding in substance and effect that, in determining whether there is "an annuity or other payment" paid or payable to a decedent within the meaning of that section, all rights and benefits accruing under any "contract or agreement" between an employer and employee must be considered together even though they are contained in separately established and administered plans. Estate of Bahen v. United States, 305 F.2d 827, 158 Ct.Cl. 141 (1962); All v. McCobb, 321 F.2d 633 (2d Cir. 1963); Gray v. United States, 410 F.2d 1094 (3rd Cir. 1969).

The government points out that the decedent in our pending case, in addition to the contract of December 30, 1960. also had the contract of January 1, 1960,

---

4. It will be noted that *Fusz* dealt exclusively with the applicability of Section 2039(a) and expressly disclaimed any consideration as to whether *other* estate tax provisions (e. g., Sec. 2033 also relied on by the government in our pending case) would render the renewal commissions includible in decedent's gross estate.

entitled Deferred Compensation Agreement and previously mentioned herein, under which decedent became entitled to an annuity of $10,000 per year for 10 years upon retirement after reaching 60 years of age and, if he should die before 60, his widow to be entitled to $10,000 a year for each year decedent had been employed. As already noted, the widow is now receiving benefits under this latter provision of that contract and there is no tax issue in this case as to those benefits.

However, in determining whether the insurance commissions payable under the December 30, 1960 contract come within Section 2039(a), (b), the rationale of *Bahen, All* and *Gray*, supra, requires us to consider that contract along with the Deferred Compensation Agreement of January 1, 1960—even though the contracts are separate in that they were not created by the same document and did not make any express reference one to the other—and to read the two contracts together as if both arrangements were combined into one plan providing various benefits for the employee and for his beneficiaries after the decedent's death. (See, *Gray*, supra, at pp. 1103–1104, 1105–1106 of 410 F.2d).

Considering the two contracts as one plan, we note that the Deferred Compensation Agreement of January 1, 1960 did clearly provide a post employment annuity payable to the decedent, himself, upon retirement after reaching age 60. Although this annuity never became effective, decedent was possessed of the right to receive an annuity in the future under the stated conditions and, under the rationale of *Bahen, All* and *Gray*, supra, this is sufficient to bring that particular contract within the terms of Section 2039(a), (b). (See, Gray, supra, pp. 1101–1102, 1111.)

That being the case, the insurance commission benefits payable to widow under the December 30, 1960 contract, considered as part of one plan including the Deferred Compensation Agreement of January 1, 1960, comes within the terms of Section 2039(a), (b)—even

though, if it stood alone (as in Fusz, relied on by plaintiff) it would not come within the statute. *Bahen, All* and *Gray*, supra.

For the reasons hereinabove set forth and in the light of the authorities cited herein, the court finds and concludes that upon the Agreed Statement of Facts in this case judgment should be and is hereby rendered against plaintiff and in favor of defendant.